STATE OF NEBRASKA, APPELLEE, V. TIMOTHY G. MCGURK,
APPELLANT.

532 N.W.2d 354

Filed May 30, 1995. No. A-93-521.

James R. Mowbray, of Mowbray & Walker, P.C., for appellant.

Norman Langemach, Jr., Lincoln City Prosecutor, for appellee.

SIEVERS, Chief Judge, and MILLER-LERMAN, Judge, and WARREN, District Judge, Retired.

MILLER-LERMAN, Judge.

Timothy G. McGurk appeals the Lancaster County District Court's affirmance of the county court's denial of his motion for postconviction relief. For the reasons recited below, we affirm.

## BACKGROUND

On September 28, 1990, Officer Michael Johnston of the Lincoln Police Department arrested McGurk for driving while under the influence of alcohol (DWI). Following McGurk's arrest, the State filed a complaint charging McGurk with DWI, third offense. McGurk pleaded not guilty to the charges, and the case proceeded to trial.

The record reflects that at no time prior to trial did McGurk's trial counsel inform him of the availability of a jury trial for DWI, third offense, cases in Nebraska, notwithstanding the holding in *Richter v. Fairbanks*, 903 F.2d 1202 (8th Cir. 1990), which had been decided May 23, 1990. Consequently, McGurk did not request a jury trial, and McGurk's case was tried to the court on January 8, 1991.

The trial testimony covers about 130 transcribed pages. Johnston testified that while on an unrelated traffic stop he witnessed McGurk drive by and remain a lengthy time at a stop sign. After completing the traffic stop, Johnston followed McGurk and witnessed McGurk make a wide turn and "weave back and forth within the lane touching center line." Johnston stopped McGurk. Following the stop, Johnston saw that McGurk's eyes were bloodshot and watery, his face was flushed, and he smelled of alcohol. Johnston asked McGurk to exit his vehicle to perform field sobriety tests. According to Johnston, McGurk was wobbly and held onto the vehicle to maintain his balance. McGurk refused to perform field sobriety tests. Johnston opined that McGurk was intoxicated and arrested him. After Johnston took McGurk to the jail at 9th and J Streets, McGurk was tested on an Intoxilyzer, which measured a blood alcohol content of .282. Ronald Ritenour, a correctional officer at the Lancaster County correctional facility, testified as to McGurk's uncooperativeness at the jail. Rex Thompson testified regarding the maintenance of the Intoxilyzer. McGurk testified and denied making a wide turn. McGurk admitted having about five beers in the late afternoon and one beer later that night prior to arrest at approximately 12:51 a.m. on September 28, 1990. McGurk's citation charged McGurk with DWI, in violation of Lincoln Mun. Code § 10.52.020. Following closing arguments, the trial judge found McGurk guilty.

An enhancement hearing was held on January 22, 1991. Following the enhancement hearing, at which evidence of two previous DWI convictions was received, the trial court sentenced McGurk for DWI, third offense, to 3 months in jail; fined him $500 plus costs; and revoked his driver's license and all driving privileges in the State of Nebraska for a period of 15 years. The Lancaster County District Court affirmed McGurk's conviction and sentence on July 8, 1991.

McGurk filed a direct appeal of his conviction and sentence to the Nebraska Supreme Court. The issues McGurk asserted on direct appeal generally challenged the probative value of the evidence at the enhancement hearing and the propriety of his prior DWI offenses, as used to enhance the September 28, 1990,

offense. McGurk did not assert a direct appellate claim surrounding his right to a jury trial. The Supreme Court affirmed the decision of the district court by memorandum opinion dated October 28, 1992. On October 30, 1992, the Supreme Court, referring to *Richter, supra*, recognized the right to a jury trial in DWI, third offense, cases. *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992). There is an indication in the record that McGurk also sought habeas corpus relief in 1992, in the U.S. District Court for the District of Nebraska, and the petition was voluntarily dismissed.

Following his direct appeal, McGurk began to serve his sentence on January 11, 1993. McGurk filed a motion for postconviction relief in the Lancaster County Court on January 14, 1993, in which he alleged that "his conviction was obtained in violation of his right to a trial by jury" and that his trial and appellate counsel had been ineffective by failing to inform him of his right to a jury trial and by failing "to preserve and challenge" McGurk's right to a jury trial. See, U.S. Const. amend. VI; Neb. Const. art. I, § 6.

The county court granted McGurk an evidentiary hearing on his postconviction motion. The evidence adduced at the hearing included an affidavit from McGurk's trial and appellate counsel which stated that counsel did not know of or advise McGurk of McGurk's right to a jury trial under *Richter*. McGurk testified that he was not advised by trial counsel of his right to a jury trial. McGurk testified as follows:

Q Okay. You had occasion, no matter how brief, to discuss things with [trial counsel] before you went to trial?

A Very briefly.

Q Okay. During the totality of those interactions with [trial counsel], either by phone or in person, did [trial counsel] ever mention to you that you may have a right to jury?

A No, he did not.

Q I take it therefore, that there was no discussion of whether you should present this case to a jury, or to the bench?

A None, whatsoever.

. . . .

Q Did you ever indicate to [trial counsel], at any time, that you wanted to waive your right to a jury trial?

A No.

At the postconviction hearing, the State offered exhibit 7, over a relevancy objection, which purported to show that attorneys in Lancaster County who represented defendants in DWI, third offense, cases during the relevant time period frequently did not request jury trials. Exhibit 7 was a tabulation prepared by the State regarding about 40 cases in the relevant timeframe.

At the postconviction hearing, the State argued that McGurk's trial and appellate counsel's performance was comparable to that of other attorneys and that McGurk did not suffer prejudice by virtue of trial counsel's alleged deficiency because the evidence against McGurk was "overwhelming, or at least certainly beyond a reasonable doubt." The State also observed that trial counsel's postconviction affidavit did not suggest how he would have tried the case differently to a jury or that "he had any significant defenses that would have been persuasive to a jury."

McGurk's counsel argued at the postconviction hearing that the absence of advice regarding a right to a jury trial denied McGurk a "fundamental bedrock right" and that a new trial is appropriate without regard to whether or not McGurk was prejudiced by trying his case to the court. McGurk's postconviction counsel argued that a reversal and remand were required to give McGurk "the possibility to cho[o]se to present his case to a jury." McGurk's postconviction counsel noted that "there are factual issues to be decided, and that it's perchance a jury may have decided it otherwise." Elsewhere, McGurk's postconviction counsel argued that it was "remotely possible" that a jury would disagree with the court in deciding the factual issues in the case.

Following the evidentiary hearing, the county court denied McGurk's request for postconviction relief. In denying the request for postconviction relief, the county court stated:

Upon consideration of the caliber of the representation and the skills of the attorneys referred to in Exhibit 7 and in the arguments, the Court cannot find that [McGurk's

trial counsel] was incompetent or ineffective by not demanding a trial by jury. . . . [T]he Court was aware that very few attorneys were even making demands for jury trials at that time and under those circumstances.

On appeal, the district court affirmed the county court's denial of postconviction relief. McGurk appeals to this court.

## ASSIGNMENTS OF ERROR

McGurk assigns as error the failure of the trial court as affirmed by the district court to grant postconviction relief, claiming that McGurk's conviction is unconstitutional because it was obtained in violation of his right to a jury trial and his right to effective assistance of counsel. He also claims that the trial court improperly received exhibit 7. In view of our ruling, the issue of the admissibility of exhibit 7 is moot.

## SCOPE OF REVIEW

In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable. *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994); *State v. Marchese*, 245 Neb. 975, 515 N.W.2d 670 (1994); *State v. Barrientos*, 245 Neb. 226, 512 N.W.2d 144 (1994). A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *Barrientos, supra.*

Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993).

## ANALYSIS

*Postconviction Statute.*

Section 29-3001 of the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 1989 & Cum. Supp. 1992), provides in pertinent part:

A prisoner in custody under sentence and claiming a

right to be released on the ground that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States, may file a verified motion at any time in the court which imposed such sentence, stating the grounds relied upon, and asking the court to vacate or set aside the sentence.

McGurk alleged in his postconviction pleading filed January 14, 1993, that he began serving his sentence on January 11. He was, therefore, in custody at the time of filing for relief as required by the statute and case law. See, e.g., *State v. Blankenfeld*, 228 Neb. 611, 423 N.W.2d 479 (1988). See, also, *State v. Costanzo*, 242 Neb. 478, 495 N.W.2d 904 (1993). The remainder of his sentence, the 15-year driver's license revocation, is still in effect. McGurk still has an interest in the litigation, and a benefit would flow to him were he successful in this postconviction case. Compare *State v. Eutzy*, 242 Neb. 851, 496 N.W.2d 529 (1993). Indeed, the seriousness of a 15-year driver's license revocation was a basis for concluding that persons charged with third-offense DWI were entitled to a jury trial in *Richter v. Fairbanks*, 903 F.2d 1202 (8th Cir. 1990), and *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992). The essence of McGurk's postconviction claim is that he was denied his constitutional right to a jury trial due to the ineffective assistance of his trial counsel.

*Ineffectiveness of Counsel in Postconviction Actions: Application of Strickland.*

The State refers us to *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993), which generally sets forth the following two-pronged test for determining the effectiveness of counsel in a postconviction case: (1) whether the attorney, in representing the defendant, performed at least as well as an attorney with ordinary training and skill in criminal law in the area and (2) whether the defendant was prejudiced in the defense of his case as a result of his attorney's actions or inactions. The two-pronged test in *Nielsen* was derived from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984). In summarizing the holding in *Strickland*, the *Nielsen* court stated:

> Under *Strickland*, a [postconviction] defendant must show that his trial counsel's performance was deficient and that the deficient performance prejudiced the defendant's defense in such a way that the defendant was denied a fair trial, that is, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

243 Neb. at 212, 498 N.W.2d at 536. Thus, under *Strickland*, a postconviction appellant must show counsel's deficient performance and prejudice to the defendant.

McGurk argues that the failure of counsel to advise him of his right to a jury trial denied him a "fundamental bedrock right." McGurk's argument continues that an analysis of prejudice is inappropriate due to the gravity of the deprivation. McGurk's vocabulary is reminiscent of the expression "structural defects" found in *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). However, the Court noted in *Fulminante* that an analysis of harmfulness remains appropriate in such cases and that "constitutional error does not automatically require reversal of a conviction, [and] most constitutional errors can be harmless." 499 U.S. at 306. See, also, *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

McGurk next argues that to the extent prejudice must be established, it should be presumed in this case. We do not agree. We are aware of the analysis and holding in *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the direct appeal, ineffective assistance of counsel, companion case to *Strickland*. Under *Cronic*, counsel is presumed to be competent, but under certain specified circumstances prejudice to the accused is presumed. The text of *Cronic* lists the following three circumstances in which prejudice will be presumed: (1) where the accused is completely denied counsel at a critical stage of the proceedings, (2) where counsel fails to subject the prosecution's case to meaningful adversarial testing, and (3) where the surrounding circumstances may justify a presumption of ineffectiveness

without inquiry into counsel's actual performance at trial. According to footnote 28 in *Cronic*, it appears that prejudice will also be presumed where there is an actual conflict of interest among multiple defendants jointly represented by the same counsel.

A review of relevant jurisprudence shows that based on *Cronic*, the Supreme Court of New Hampshire in *State v. Anaya*, 134 N.H. 346, 592 A.2d 1142 (1991), presumed prejudice based on a failure of the adversarial process where defense counsel in closing argument repeatedly asked for a conviction of a lesser charge rather than arguing defendant's innocence. Similarly, based on *Cronic*, the U.S. Court of Appeals for the Sixth Circuit, in *Martin v. Rose*, 744 F.2d 1245 (6th Cir. 1984), presumed prejudice based on absence of counsel where defense counsel refused to participate in any aspect of the trial because he erroneously believed that participating would waive defendant's pretrial motions or render their denial harmless error.

Although we recognize those instances where prejudice was presumed under *Cronic*, it has generally been observed that the *Cronic* exceptions permit finding a "constructive denial of counsel . . . in 'only a very narrow spectrum of cases . . . .' " *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986). See *Martin v. McCotter*, 796 F.2d 813 (5th Cir. 1986), *cert. denied* 479 U.S. 1057, 107 S. Ct. 935, 93 L. Ed. 2d 985 (1987). See, also, *Hollenback v. U.S.*, 987 F.2d 1272 (7th Cir. 1993). Indeed, it has been stated that unless a defendant "can show that the instant case is squarely governed by *Cronic*, he must rebut a presumption that *Strickland* should apply." *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990). Our understanding that *Cronic* has a narrow application is consistent with the language of the *Cronic* opinion to the effect that pursuit of claims based on specified errors should be evaluated under *Strickland*. The record and relevant jurisprudence do not support a claim that the performance of McGurk's trial counsel justifies the presumption of prejudice under *Cronic*, and we, therefore, consider defense counsel's performance under the standard announced in *Strickland*.

*Deficiency of Counsel.*

The record is undisputed that McGurk was not advised of his right to a jury trial prior to the time his case was tried to the bench on January 8, 1991.

On May 23, 1990, over 7 months prior to McGurk's trial, the U.S. Court of Appeals for the Eighth Circuit decided *Richter v. Fairbanks*, 903 F.2d 1202 (8th Cir. 1990). In *Richter*, the defendant petitioned for a writ of habeas corpus, challenging the denial of his request for a jury trial in a DWI, third offense, case tried in Nebraska. *Richter* did not involve the issue of ineffective assistance of counsel.

In *Richter*, the Eighth Circuit analyzed a defendant's right to a jury trial for third-offense DWI under Nebraska law. Specifically, the *Richter* analysis involved (1) Neb. Rev. Stat. § 39-669.07 (Reissue 1988) (currently codified at Neb. Rev. Stat. § 60-6,196 (Reissue 1993)), which authorizes cities and villages to pass DWI ordinances and provides that in the case of a conviction of third-offense DWI, the ordinance must include a 15-year driver's license revocation provision, in addition to any other penalties; (2) Neb. Rev. Stat. § 24-533 (Reissue 1985), which provided that the county courts of Nebraska shall have jurisdiction over prosecutions for violations of city and village ordinances; and (3) Neb. Rev. Stat. § 24-536 (Reissue 1985), which disallowed jury trials for prosecutions under city and village ordinances.

The *Richter* court analyzed the foregoing statutes in light of the U.S. Supreme Court decision in *Blanton v. North Las Vegas*, 489 U.S. 538, 109 S. Ct. 1289, 103 L. Ed. 2d 550 (1989). *Blanton* held that certain "petty" crimes or offenses, as opposed to "serious" crimes or offenses, do not give rise to the Sixth Amendment right to jury trial. *Blanton* further indicated that " 'the severity of the maximum authorized penalty' " is the most objective indication of the seriousness of the crime and that a maximum authorized prison term of more than 6 months implicates the right to jury trial, whereas a term of 6 months or less presumptively does not. *Id.*, 489 U.S. at 541.

In *Richter*, the defendant charged with DWI, third offense, faced a maximum possible prison term of 6 months and a 15-year driver's license revocation. Pursuant to *Blanton*, the

*Richter* court concluded that "the 15-year license revocation, considered together with the maximum six month prison term, is a severe enough penalty to indicate that the Nebraska legislature considers third-offense DWI a serious crime." 903 F.2d at 1204. Accordingly, the *Richter* court found that the defendant was unconstitutionally denied his demand for a jury trial. The *Richter* court further stated that § 24-536, which disallowed jury trials for prosecutions under city and village ordinances, was unconstitutional as applied to the facts of that case. The *Richter* court granted conditional habeas corpus relief, with the expectation that the state court would vacate the judgment and grant a new trial. Apparently because there was no issue of ineffectiveness of counsel, no analysis of prejudice is contained in *Richter*. Based on the Eighth Circuit's decision in *Richter*, as of May 23, 1990, defendants charged with third-offense DWI in Nebraska were entitled to a trial by jury.

The State argues that notwithstanding the holding in *Richter*, McGurk's trial counsel performed at least as well as other attorneys in the area at the given time and, therefore, that counsel's performance was not deficient. The State relies primarily on exhibit 7 in support of this argument. We believe that the State's analysis is inappropriate in this case.

An attorney has a duty "to investigate the facts of his client's case and to research the law applicable to those facts." *People v. Ledesma*, 43 Cal. 3d 171, 222, 729 P.2d 839, 871, 233 Cal. Rptr. 404, 436 (1987). The Eighth Circuit decided *Richter* over 7 months before McGurk's trial, and McGurk's trial counsel could have readily discovered the *Richter* opinion by standard research techniques. In this regard, it has been observed: "Counsel 'is expected . . . to possess knowledge of those plain and elementary principles of law which are commonly known by well informed attorneys, and to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques.' " *People v. McCary*, 166 Cal. App. 3d 1, 8, 212 Cal. Rptr. 114, 117-18 (1985) (quoting *Smith v. Lewis*, 13 Cal. 3d 349, 530 P.2d 589, 118 Cal. Rptr. 621 (1975)). Pursuant to the foregoing, we conclude that an attorney representing a defendant charged with DWI, third offense, whose case was

tried in Nebraska in 1991 should have known of or have discovered the rules of law in *Richter* before proceeding to trial with his or her client, notwithstanding the practice of other attorneys. McGurk has established that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

*Prejudice to McGurk.*

In *Strickland*, the U.S. Supreme Court noted that even where counsel's representation was deficient, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694. The additional "prejudice" requirement is based on the conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.*, 466 U.S. at 691. Thus, "[e]ven if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense." *Id.*, 466 U.S. at 693.

In Nebraska, the Supreme Court has long held that proof of prejudice is required to succeed in establishing a claim of ineffective assistance of counsel. See, e.g., *State v. Mays*, 203 Neb. 487, 279 N.W.2d 146 (1979). Thus, in a pre-*Strickland* case, *State v. Journey*, 207 Neb. 717, 301 N.W.2d 82 (1981), the Supreme Court held that counsel's advice to waive a jury and try a case to the court was not unreasonable in the absence of proof of prejudice.

*Allegation of Prejudice.*

In order to satisfy the prejudice prong of the *Strickland* analysis, a defendant must first make an allegation of the nature and effect of the requisite prejudice. *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In *Hill*, the U.S. Supreme Court held that the district court did not err in denying habeas corpus relief without a hearing where the petitioner's allegations were insufficient to satisfy the prejudice requirement of the *Strickland* test. In *Hill*, the petitioner

claimed that he received ineffective assistance of counsel because his counsel failed to correctly advise him regarding parole eligibility prior to the entry of his guilty plea. However, the petitioner did not allege that had counsel properly informed him about his parole eligibility date he would not have pleaded guilty and would have insisted on going to trial, nor did he allege any special circumstances that could support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether to plead guilty. See, *Jackson v. Dutton*, 861 F.2d 720 (table), 1988 WL 114805 (unpublished opinion) (6th Cir. 1988), *cert. denied* 489 U.S. 1027, 109 S. Ct. 1158, 103 L. Ed. 2d 217 (1989) (affirming denial of habeas corpus relief where petitioner failed to allege that he would have accepted a plea bargain rather than gone to trial had counsel properly advised him); *Craker v. McCotter*, 805 F.2d 538 (5th Cir. 1986) (reversing grant of habeas corpus relief where petitioner failed to allege in his petition that had counsel effectively assisted him, he would have rejected a plea offer and insisted on going to trial). Compare *United States v. Giardino*, 797 F.2d 30 (1st Cir. 1986) (vacating denial of motion under 28 U.S.C. § 2255 (1988) seeking to set aside a guilty plea where defendant explicitly alleged that he would not have pleaded guilty, but would have gone to trial, had his counsel properly informed him regarding the availability of favorable testimony of an alleged accomplice).

In Nebraska, the Supreme Court has stated repeatedly that for a postconviction motion to succeed, a defendant must allege facts which, if proved, constitute a denial of a constitutional right. *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994). A claim of prejudice will not succeed where the claim is merely speculative. See *State v. Gibbs*, 238 Neb. 268, 470 N.W.2d 558 (1991).

In the instant case, McGurk did not allege in his petition for postconviction relief that had he known of his right to a jury trial he would have demanded a trial by jury, nor did McGurk allege that had his case been tried to a jury rather than to the court, his strategy, defenses, proofs, or other tactics would have been different and that he verily believed that the outcome would have been favorable. In his postconviction motion,

McGurk merely makes the conclusory allegation that "his conviction was obtained in violation of his right to a trial by jury." In view of the requirement of pleading requisite prejudice, this allegation is inadequate. Nonetheless, the trial court liberally construed the pleading requirement in conducting a hearing on the postconviction motion.

*Proof of Prejudice.*

 In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove prejudice resulted from counsel's allegedly deficient performance. In *State v. Hochstein*, 216 Neb. 515, 519-20, 344 N.W.2d 469, 473 (1984), the Supreme Court denied relief and stated: "[The defendant] is unable to establish in any meaningful way how those failures [of counsel], if in fact they occurred, prejudiced [him] or, if handled in another manner, would have produced a different result. His claims at best are mere assertions." See *State v. Sanders*, 241 Neb. 687, 490 N.W.2d 211 (1992) (denying postconviction relief where defendant failed to prove he was prejudiced by counsel's failure to file direct appeal in a timely manner). Indeed, it has been held in a nonpostconviction case that "to sustain a claim of ineffective assistance of counsel, the defendant must demonstrate prejudice was suffered, and the record must affirmatively support the claim." *State v. Jones*, 241 Neb. 740, 745-46, 491 N.W.2d 30, 33-34 (1992). See, *Matematico v. U.S.*, No. CV-91-4530, 1992 WL 100202, at *1 (E.D.N.Y. Apr. 22, 1992) (denying defendant's motion under § 2255 to vacate sentence based on ineffective assistance of counsel where defendant asserted that she would not have pleaded guilty had she known that by pleading guilty she put her real estate broker's license at risk and where she made "no attempt to show that consideration of her real estate license would have played any role in surrendering her right to a trial by jury"); *People v. Maxwell*, 148 Ill. 2d 116, 592 N.E.2d 960 (1992), *cert. denied* 506 U.S. 977, 113 S. Ct. 471, 121 L. Ed. 2d 377 (affirming convictions and sentences where even assuming counsel's performance was deficient, defendant failed to establish prejudice by waiving sentencing jury). Compare, *U.S. v. Thompson*, 27 F.3d 671 (D.C. Cir. 1994),

*cert. denied* ____ U.S. ____, 115 S. Ct. 650, 130 L. Ed. 2d 554; *Woodard v. Collins*, 898 F.2d 1027 (5th Cir. 1990); *People v. Huynh*, 229 Cal. App. 3d 1067, 281 Cal. Rptr. 785 (1991).

In the instant case, McGurk offered no proof regarding prejudice. The affidavit of his trial counsel states that he did not advise McGurk of his right to a jury trial under *Richter v. Fairbanks*, 903 F.2d 1202 (8th Cir. 1990). The affidavit does not suggest that had trial counsel been aware of *Richter*, a jury demand would have been made, and the case would have proceeded differently and would have resulted in an acquittal. McGurk confirmed in his testimony that he was not advised of his right to a jury trial. He did not state that he would have demanded a jury trial at the time had he been properly advised or upon reflection that he would demand jury trial if granted a remand. During oral argument at the postconviction hearing, counsel stated that a remand would provide McGurk with "the possibility to cho[o]se to present his case to a jury." In sum, the evidence does not demonstrate that McGurk would have demanded a jury initially, that he would insist on a jury trial upon a remand, or that the strategy and outcome would have differed had he known of *Richter*.

In meeting the prejudice standard, *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), states, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Instead, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694. In making this determination, a court "must consider the totality of the evidence before the judge or jury." *Id.*, 466 U.S. at 695. In commenting on *Strickland* in *Hill v. Lockhart*, 474 U.S. 52, 59-60, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the U.S. Supreme Court stated that in making "predictions of the outcome at a possible trial, where necessary, [such predictions] should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' " (Quoting *Strickland, supra*.)

In Nebraska, the Supreme Court has denied postconviction

relief based on ineffective assistance of counsel for lack of prejudice and stated: "Under the facts of the case, there is no reasonable probability that a jury would not have returned a verdict of guilty of first degree murder." *State v. Escamilla*, 245 Neb. 13, 27, 511 N.W.2d 58, 67 (1994). In *State v. Lyman*, 241 Neb. 911, 492 N.W.2d 16 (1992), the Supreme Court denied postconviction relief where the trial evidence was "overwhelming," without consideration of alleged deficiencies by counsel for alleged failure to investigate and to move to suppress a confession. See *State v. Evans*, 235 Neb. 575, 456 N.W.2d 739 (1990). See, also, *Stewart v. Grammer*, No. CV86-L-51, 1987 WL 43122 (D. Neb. Oct. 20, 1987), *aff'd* 871 F.2d 1091 (8th Cir. 1988) (table) (magistrate recommendation to deny habeas corpus relief for lack of prejudice where evidence was overwhelming).

In the instant case, an objective review of the totality of the record shows that the evidence that McGurk was driving while intoxicated was overwhelming. The postconviction hearing evidence does not establish prejudice by virtue of the fact that McGurk's case was tried to the court rather than to a jury. The record does not undermine the outcome. Although there may be a case where the outcome of trial to a jury rather than to the court would be different, nothing in the record of McGurk's trial or of the postconviction hearing meets the *Strickland* test that there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694. McGurk has not established prejudice as required for relief under *Strickland*.

## CONCLUSION

Based on the foregoing, we conclude that although trial counsel's performance was deficient, McGurk did not establish prejudice as a result of that deficiency, and none will be presumed. Accordingly, the county court's order denying postconviction relief, as affirmed by the district court, is affirmed.

AFFIRMED.