STATE OF NEBRASKA, APPELLEE, V. STEVEN L. DAVIS, APPELLANT.
577 N.W.2d 763

Filed April 14, 1998.   No. A-97-060.

Eugene G. Schumacher, of Sipple, Hansen, Emerson & Schumacher, for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

HANNON, IRWIN, and MUES, Judges.

Mues, Judge.

## I. INTRODUCTION

On September 13, 1994, Steven L. Davis was convicted of burglary, first degree criminal trespass, third degree assault on an officer, and tampering with physical evidence. Davis directly appealed to this court, and we affirmed his convictions in *State v. Davis*, 95 NCA No. 31, case No. A-94-1056 (not designated for permanent publication).

Davis subsequently filed a motion for postconviction relief, requesting an evidentiary hearing and appointment of counsel to assist in his appeal. Davis' motion was granted, and Davis' newly appointed counsel filed a supplemental motion for post-conviction relief. Following an evidentiary hearing, the district court denied Davis' motions. Davis now appeals that judgment. For the reasons set forth below, we affirm.

## II. BACKGROUND

On the morning of May 5, 1994, police officers received a report that Bob's Bike Shop had been burglarized. Reportedly stolen were several pairs of Oakley sunglasses, a Schwinn Moab mountain bike, and some cash.

During an initial search of the area, the Schwinn mountain bike was discovered on the roof of a building near the bike shop. The only window near the bike which appeared to be functional was the window to Davis' apartment. Investigator Douglas Molczyk, of the Columbus Police Department, proceeded to Davis' apartment to question him about the burglary. After knocking on the door and announcing who he was, Molczyk was admitted into the apartment.

When Molczyk entered the apartment, there was a male standing in the living room, later identified to be Terry McHugh, and Davis was lying on the couch. Molczyk informed Davis and McHugh that there had been a burglary at the bike shop and asked if they knew anything about it. Davis got up off the couch, revealing a pair of sunglasses. The sunglasses had a white tag attached by a white string, similar to the tags used by Bob's Bike Shop.

Both Molczyk and Davis grabbed for the sunglasses. Molczyk grabbed the sunglasses, and Davis ripped off the tag.

Molczyk attempted to place Davis under arrest, but Davis broke free and ran to the bathroom. While in the bathroom, Davis flushed the tag down the toilet. When Davis came out of the bathroom, he told Molczyk to get out of his apartment. Molczyk attempted to calm Davis down, but Davis refused to do so. Molczyk asked a passerby to go to the bike shop and tell the officers that he needed assistance. Davis took a boxer's stance and stated, " 'Leave my apartment or I'll deck you.' " 95 NCA No. 31 at 46. Molczyk backed away from Davis, and Davis hit Molczyk in the chest, causing him to lose his balance and fall out of the apartment. Molczyk skinned a knuckle in the process.

Officer Jeffrey Uhl arrived from the bike shop to assist Molczyk, and they attempted to reenter the apartment by kicking in the door. They were unable to do so, since the door had apparently been barred by an object. Someone inside the apartment said they were going to shoot the first officer who came through the door. The officers called for backup, and a standoff ensued, lasting for 2 hours. After the standoff, McHugh exited the apartment and was placed under arrest. Officers entered Davis' apartment and placed Davis under arrest for assault on an officer. Other charges were pending upon the outcome of the investigation of the burglary.

During the standoff, officers had called Davis' parole officer, Terry Denney, and informed him of the burglary and standoff. Denney decided that he needed to join the officers, and he drove to the location of Davis' apartment. After Davis had been arrested and escorted from the apartment, Denney requested that several officers assist in a "parole search" of Davis' apartment. Molczyk and one or two other officers assisted Denney in the search. Denney instructed the officers to search for contraband, weapons, and evidence from the burglary, any of which would have been a violation of the terms of Davis' parole.

Upon entering the apartment, Denney and the officers observed smoke in the kitchen and found evidence that someone had tried to destroy a pair of sunglasses by "cooking" them in the stove. A further search of the apartment produced a Schwinn mountain bike owner's manual, which contained the same serial number as the reportedly stolen bike. The officers also found several pairs of Oakley sunglasses, with tags similar

to those used by Bob's Bike Shop; a pair of tennis shoes with tread which appeared to match a footprint found near the bike shop; and an ax, which may have been used in an attempt to gain access to the bike shop.

Prior to trial, Davis filed a motion to suppress evidence found during the first "search" of Davis' apartment. Davis alleged that the search was done prior to, not incident to, his arrest; that the search was done without a warrant and without probable cause to believe a felony had been committed; and that there were no exigent circumstances. At the hearing, held August 31, 1994, Davis' counsel argued that the evidence showed that Molczyk entered Davis' apartment without Davis' consent and therefore had no right to be in Davis' apartment. The trial court determined that Molczyk did have permission to enter the apartment and overruled the motion. The court's finding was not the subject of Davis' direct appeal.

On the morning trial was scheduled to commence, Davis' court-appointed counsel, Thomas Spinar, informed the court that Davis had requested that Spinar withdraw as counsel. The court inquired of Davis as to why he wished Spinar to withdraw. Davis informed the court that Spinar was working with the prosecutor; that Spinar failed to have evidence independently tested so that Davis could prove it was planted; and that at the suppression hearing, Davis was not given the opportunity to get on the stand and tell his side of the story.

Davis also introduced a letter of complaint he had written to the Nebraska State Bar Association. In the letter, Davis alleged that Spinar had refused to accept several of Davis' telephone calls; that Spinar had tried to persuade Davis to plead guilty; and that at the hearing on the motion to suppress, Spinar refused to call McHugh to testify. According to Davis, McHugh was going to admit his guilt and testify that Davis was not involved in the burglary. The court explained that during the trial, Davis would have the opportunity to call his witnesses. The court further explained that mere distrust or dissatisfaction with an attorney was not a sufficient reason to require appointment of substitute counsel and informed Davis that it was going to overrule his request. Davis then asked the court for a continuance in order to hire another attorney. The court, noting that it was the

day of trial, denied Davis' request. Davis then informed the court that he wished to proceed pro se. However, upon further inquiry, Davis stated that he did not wish to proceed pro se. Accordingly, Spinar remained as counsel throughout the trial.

On September 13, 1994, Davis was found guilty of burglary, first degree criminal trespass, third degree assault on an officer, and tampering with physical evidence. Davis, acting pro se, filed a motion for new trial on September 27. On October 5, Davis filed an amended motion for new trial. On October 13, Davis filed another motion for new trial. A sentencing hearing was held October 28. On that same date, prior to sentencing, the court addressed the three motions for new trial. The court first inquired as to who had filed the motions. Spinar informed the court that Davis had filed the motions. Spinar advised the court that Davis had contacted him within the initial 10-day period for filing a motion for new trial and requested Spinar to file such motion but that for reasons which Spinar did not want to comment on, he chose not to file the motion on Davis' behalf. The court found that the three motions for new trial were untimely and therefore a nullity, and of no force or effect.

Davis was then sentenced to terms of imprisonment of not less than 7 nor more than 10 years on the charge of burglary, 1 year on the charge of first degree criminal trespass, not less than 1 nor more than 2 years on the charge of third degree assault on an officer, and not less than 3 nor more than 4 years on the charge of tampering with physical evidence.

Spinar, on Davis' behalf, timely appealed to this court, alleging that the trial court erred in admitting irrelevant evidence, that there was insufficient evidence to support the convictions for burglary and trespass, and that the sentences were excessive. Davis' convictions were affirmed in *State v. Davis*, 95 NCA No. 31, case No. A-94-1056 (not designated for permanent publication).

On October 20, 1995, Davis filed a motion for postconviction relief in Platte County District Court and a motion that counsel be appointed to assist in his motion. Davis' request for counsel was granted, and a supplemental motion for postconviction relief was filed May 15, 1996. In his motions, Davis alleged that prior to trial, the trial court erred in not granting his request for

new counsel due to a conflict of interest, since he had filed a notice of complaint with the Nebraska State Bar Association against Spinar. Davis also alleged that Spinar was ineffective due to (1) his failure to file a motion to suppress evidence obtained in a warrantless search, (2) his failure to file a motion to quash Davis' warrantless arrest and to suppress evidence obtained pursuant to the illegal arrest, (3) Spinar's inquiry into Davis' past criminal history and Spinar's failure to object to the prosecution's cross-examination of Davis, and (4) Spinar's failure to file a motion for new trial as requested. After an evidentiary hearing, the district court dismissed Davis' motions.

In a well-reasoned opinion, which will be set forth more fully in the discussion, the district court dismissed Davis' motions. Davis now appeals this judgment.

## III. ASSIGNMENTS OF ERROR

Davis alleges the district court erred in failing to grant his motion for postconviction relief based upon ineffective assistance of counsel due to Spinar's (1) failing to file a motion to suppress all evidence obtained subsequent to Davis' warrantless arrest, (2) failing to file a motion to suppress all evidence obtained in the warrantless search of Davis' apartment, (3) adducing evidence with respect to Davis' prior convictions and not objecting when the State further questioned Davis regarding the same, and (4) failing to file a motion for new trial. Davis also alleges the district court erred in not granting postconviction relief because of the district court's failing to appoint new counsel due to a conflict of interest.

## IV. STANDARD OF REVIEW

In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable. *State v. Barrientos*, 245 Neb. 226, 512 N.W.2d 144 (1994).

A criminal defendant requesting postconviction relief has the burden of establishing a basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997).

## V. DISCUSSION

### 1. Ineffective Assistance of Counsel

■ To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Hansen*, 252 Neb. 489, 562 N.W.2d 840 (1997); *State v. Massey*, 252 Neb. 426, 562 N.W.2d 542 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. McGurk*, 3 Neb. App. 778, 532 N.W.2d 354 (1995).

#### (a) Prior Convictions Inquiry

Davis elected to testify at his trial. During direct examination, Spinar asked Davis if he had been convicted of a felony within the past 10 years. Davis indicated that he had. Spinar then elicited testimony that Davis had been "talked into getting [some] guy an eight ball of coke" and was convicted of delivery of a controlled substance. Davis also testified that when the alleged burglary occurred, he had 2 weeks left on parole.

During cross-examination, the State inquired into the fact that Davis had previously testified that he had been drinking and questioned whether drinking violated the terms of Davis' parole. Davis answered that drinking was permissible as long as he was not drunk. Spinar made no objections during any of this cross-examination.

■ Under Neb. Rev. Stat. § 27-609 (Reissue 1995), once a prior conviction has been established, the inquiry must end, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof. See *State v. Edwards*, 2 Neb. App. 149, 507 N.W.2d 506 (1993). The district court determined that because Spinar went beyond the permissible inquiry and did not object when the State made further inquiry, Spinar's performance was deficient, thus satisfying the first prong of the two-pronged test for determining the effec-

tiveness of counsel in a postconviction case as explained in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The district court then addressed the second prong of *Strickland*, whether "but for counsel's deficient performance, the result of the proceeding would have been different."

In addressing this second prong, the district court found:

In the case at hand, although the defendant's convictions largely rested on circumstantial evidence, such evidence is nonetheless rather overwhelming in establishing the defendant's guilt. During the defendant's trial, it was established that access to the victim's business was gained by breaking off a padlock to a rear door that led to the basement. Cut, or ax marks appeared on another door indicating an attempt to gain entry by chopping through it. An ax, with paint chips on the cutting edge similar to the paint on the victim's door, was found at the defendant's residence. At trial, the defendant acknowledged ownership of the ax. A partial shoe print discovered in the victim's basement at a location where access to his business was ultimately gained by hacking through a ceiling board, was similar to that which was produced by the tread of a pair of tennis shoes recovered from the defendant's residence. At trial, the defendant acknowledged ownership of the tennis shoes as well.

Various items of property stolen from the victim's business were recovered from the defendant's residence. In fact, some stolen merchandise was recovered directly underneath the defendant himself after he got up from a couch at his residence. After law enforcement officials arrived at the defendant's residence to investigate the burglary, the defendant assaulted one officer, and a two-hour standoff occurred. During the standoff, either the defendant or his co-defendant threatened to shoot the first officer who might attempt to come through the door. Likewise, during the standoff an attempt was made to burn and destroy in the kitchen stove certain of the merchandise that had been stolen from the victim's business during the course of the burglary.

> In reviewing the entire record of the defendant's trial and all evidence offered against him, the Court cannot conclude that the defendant has demonstrated a reasonable probability that the jury would have acquitted him had it not been for his trial counsel's violation of and apparent unfamiliarity with Rule 609 [§ 27-609]. A review of the entire record in this case leads the Court to the conclusion that the defendant's jury convictions were rendered with overwhelming record support, rather than only weakly supported by the record. Therefore, it is the conclusion of the Court that the defendant has failed to satisfy the second prong of the *Strickland* test, and, accordingly, his request for postconviction relief premised upon his trial counsel's deficient performance with respect to the application of Rule 609 must be denied.

Having reviewed the evidence, we wholeheartedly agree with the district court's observations. See *State v. McGurk*, 3 Neb. App. 778, 532 N.W.2d 354 (1995).

### (b) Warrantless Arrest

Davis next argues that "[s]ince [Davis] was arrested without a warrant all evidence which was obtained following his arrest is the fruit of the unlawful arrest and, as stated in [*State v. Tipton*, 206 Neb. 731, 294 N.W.2d 869 (1980)], should have been suppressed." Brief for appellant at 23.

Contrary to Davis' assertion, the *Tipton* court did not hold that a warrantless arrest may never be made in a person's residence or that *all* evidence acquired after such arrest must be suppressed. See, e.g., *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997); *State v. Ware*, 219 Neb. 594, 365 N.W.2d 418 (1985) (holding that once officer is lawfully inside residence, officer may make warrantless arrest if officer has probable cause to believe felony has been, or is being, committed).

In *Nissen*, the trial court denied the defendant's motion to suppress a statement made after the defendant was arrested. On appeal, the defendant argued that the statement was the fruit of an unconstitutional warrantless arrest in his home. The Nebraska Supreme Court determined that it was immaterial where the defendant was when he was arrested because officers

had probable cause to arrest the defendant and that the complained of statement was not related to the purported unconstitutional arrest. See, also, *New York v. Harris*, 495 U.S. 14, 110 S. Ct. 1640, 109 L. Ed. 2d 13 (1990) (holding that to be suppressible, evidence complained of must have resulted from exploitation of illegal action of government).

In the present case, we need not decide the validity of Davis' warrantless in-home arrest because the evidence which he now complains of was not the fruit of his warrantless arrest, but, rather, the fruit of the warrantless search. Thus, the district court's finding that a motion to suppress on this ground would have been unsuccessful is not clearly erroneous.

### (c) Warrantless Search

Davis next contends that Spinar was deficient for failing to file a motion to suppress evidence seized during the warrantless search of Davis' apartment. At the hearing on the motion to suppress, Spinar testified that he did not file a motion to suppress because he believed that Denney, as Davis' parole officer, had the right to search the premises. The district court concluded that the warrantless search did not violate Davis' right to be free from unreasonable search and seizure because it was done in a reasonable manner pursuant to the terms of Davis' parole order. The court thus concluded that Davis had failed to demonstrate that but for Spinar's failure to file a motion to suppress the results of the warrantless search, Davis' proceeding would have been different. We agree.

The Fourth Amendment to the U.S. Constitution protects against unreasonable searches and seizures. Generally, a search should be undertaken only pursuant to a warrant supported by probable cause. *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995). The Supreme Court, however, has recognized exceptions to the warrant requirement "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987).

In *Griffin*, the Supreme Court held that a probation officer's warrantless search of a probationer's home complied with the

Fourth Amendment because the officer followed Wisconsin statutes and regulations which authorized such searches when the officer had " 'reasonable grounds,' " 483 U.S. at 875, to believe that the probationer had possession of contraband. The Supreme Court stated, "We think it clear that the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify replacement of the standard of probable cause by 'reasonable grounds,' as defined by the Wisconsin Supreme Court." 483 U.S. at 875-76.

■ The Nebraska Supreme Court has also upheld probation searches, as long as the search was conducted in a reasonable manner and contributed to the rehabilitation of the offender. See *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980). Although the Nebraska courts have never before considered the issue in the parole context, other courts addressing the issue have held that *Griffin's* reasoning applies equally to the parole system. See, *U.S. v. Lewis*, 71 F.3d 358 (10th Cir. 1995); *U.S. v. Coleman*, 22 F.3d 126 (7th Cir. 1994); *U.S. v. Hill*, 967 F.2d 902 (3d Cir. 1992); *U.S. v. Harper*, 928 F.2d 894 (9th Cir. 1991); *U.S. v. Cardona*, 903 F.2d 60 (1st Cir. 1990). " 'Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts.' " *U.S. v. Hill*, 967 F.2d at 909, quoting *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

> The parole system is "a controlled passageway between prison and freedom." [Citation omitted.] Parole agents necessarily exercise close supervisory powers over their subjects to assure a successful transition. To adequately monitor a parolee's progress and deter further criminal conduct, a parole agent must be permitted in the proper instance to act expeditiously and without warning. "[T]he delay inherent in obtaining a warrant would make it more difficult for . . . officials to respond quickly to evidence of misconduct and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create." *Griffin*, 483 U.S. at 876, 107 S.Ct. at 3170.

*U.S. v. Lewis*, 71 F.3d at 361-62.

[T]here is "no constitutional difference between probation and parole for purposes of the fourth amendment." [Citation omitted.] In fact, parole may be an even more severe restriction on liberty because the parolee has already been adjudged in need of incarceration. [Citation omitted.] For this reason, the "special needs" of probation would appear to be heightened for parole.

*U.S. v. Hill*, 967 F.2d at 909.

Davis acknowledges that in some circumstances, warrantless searches do not violate the Fourth Amendment but argues that pursuant to the terms of his parole order, and in particular the portion emphasized below, the parole officer was required to obtain Davis' permission *at the time of the search*. Davis' parole agreement in pertinent part provides:

You shall obey all city, county, state and federal laws, ordinances, and orders . . . .

. . . .

. . . *You shall permit* your parole officer and/or personnel of Parole Administration to conduct routine searches of your person, residence, vehicle, or any property under your control, at such times as they deem necessary.

. . . You shall not possess, own, carry, or have under your control any type of weapon.

. . . You shall not use, purchase, sell, nor possess any narcotic or dangerous drug unless first prescribed by a licensed physician.

(Emphasis supplied.)

In *State v. Morgan*, 206 Neb. 818, 819, 295 N.W.2d 285, 286 (1980), condition 14 of Morgan's probation order required him to " 'submit to a search of his person or property at any time by any Law Enforcement [sic] Officer, with or without probable cause, *for controlled substances.*' " Officers received information which led them to suspect Morgan was selling drugs. Pursuant to condition 14, Morgan's probation officer and a police officer proceeded to Morgan's residence and advised him of the purpose of their visit. Morgan responded, " 'Okay, you can search my room.' " *Id.* at 820, 295 N.W.2d at 286. Upon searching Morgan's person and room, officers discovered marijuana.

After the State filed a motion to revoke Morgan's probation, Morgan filed a motion to suppress the evidence, alleging that the search was without probable cause and that condition 14 was a violation of his constitutional rights. The district court held that "'the search was not illegal, but [was] by *prior consent.*'" (Emphasis supplied.) *Id.* at 821, 295 N.W.2d at 287. Accordingly, the court denied Morgan's motion. Morgan's probation was subsequently revoked, and he appealed.

On appeal, the Nebraska Supreme Court observed that Morgan had accepted condition 14 as part of the probation order. "Morgan had already been convicted and could have been imprisoned by the court and not placed on probation. Morgan clearly had the choice of submitting to the conditions and remaining out of prison on probation or serving a prison term in the penal complex." *Id.* at 825, 295 N.W.2d at 289. The court concluded, "It is clear that the search of Morgan's premises was a 'consent' search under the authority contained in condition 14." *Id.* at 826, 295 N.W.2d at 289.

Contrary to Davis' position, it is clear that the Supreme Court's ruling was not dependent on Morgan's purported consent at the time of the search. Other courts addressing similar language have also concluded that consent at the time of the search is not necessary if the terms of the probation or parole permit warrantless searches. In *Rowe v. Lamb*, 130 F.3d 812 (8th Cir. 1997), a probation order required the defendant to submit to warrantless searches. The jailed defendant denied the probation officer consent to search his apartment; but the jailer gave the probation officer the keys, and a search was conducted. The defendant filed an action pursuant to 42 U.S.C. § 1983 (1994) against the jailer. The court found no constitutional violation because the search was valid pursuant to the terms of the probation order. In *U.S. v. Hill*, 967 F.2d 902 (3d Cir. 1992), the court found no evidence that the defendant had agreed to a warrantless search or that a warrantless search was an express condition of the parole agreement. Notwithstanding, the court upheld the search, citing the "'special needs'" of the parole system. *Id.* at 909. In *Patterson v. Bd. of Probation and Parole*, 851 F. Supp. 194 (E.D. Pa. 1994), the defendant brought a § 1983 claim. The court held that there had been no constitu-

tional violation and found that the defendant had consented to the search when he signed the parole agreement. In *State v. Martinez*, 811 P.2d 205 (Utah App. 1991), the terms of the probation agreement required the defendant to allow the Department of Corrections to search his residence without a warrant upon reasonable suspicion. The court rejected the defendant's argument that he had to be present and give actual consent, stating such an interpretation would "nullify such provisions in probation agreements, making such provisions merely 'agreements to agree.'" *Id.* at 209. Contra *Com. v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993) (holding that in absence of statutory scheme, actual consent was needed).

In the present case, we find that the warrantless search of Davis' apartment was permitted by the terms of his parole agreement and fell within the "special needs" exception to the Fourth Amendment.

Citing *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980), Davis next argues that the search was invalid because there was no rehabilitative purpose to be achieved, since

> it was a foregone conclusion at the point that the parole officer entered the apartment that [Davis] had violated his parole and evidence to that effect was available by virtue of the injury to the officer's finger unrelated to the purpose of the search. [Davis] had already been taken into custody on at least one if not more felonies. For all intents and purposes his parole was over.

Brief for appellant at 30.

While it is certainly true that the assault on the police officer was a violation of Davis' parole agreement, this incident did not eliminate the need for Denney to ascertain the full extent of Davis' parole violations. See Neb. Rev. Stat. § 83-1,122 (Reissue 1994) (when parolee has violated terms of parole, parole board has authority to issue reprimand, intensify supervision, withhold good time, or implement additional conditions rather than revoking parole).

> Although any immediate threat to the community is abated when a parolee is taken into custody, the state has a continuing interest in determining in a timely fashion whether the parolee has violated the conditions of his

parole. Only then will the parole officer and the parole board be equipped to decide whether revocation of parole is appropriate.

Importantly, the parole officer, in conducting a search pursuant to an investigation of the parole, has a duty to determine parole violations independent of the duty of the police to investigate new crimes. The state's interest in closely controlling its parolees is not undermined by defendant's arrest for a new violation as there is no guarantee that the defendant will remain in custody or that the police will continue to investigate or prosecute the newly alleged crime.

*U.S. v. Phillips*, 977 F. Supp. 1418, 1422 (D. Colo. 1997).

Reasonable searches are necessary and should be permitted in order to determine whether the [parolee] is abiding by the conditions of the [parole order], so that those supervising such persons may determine whether the [parolee] is making progress in rehabilitation efforts, particularly in drug offenses, or whether the [parolee] has fallen by the wayside and has resumed his or her incursions into the field of drug addiction, drug abuse, and similar activities.

*State v. Morgan*, 206 Neb. at 826, 295 N.W.2d at 289.

In the present case, Davis was on parole from a drug-related offense. Following a 2-hour standoff, in which someone inside Davis' residence threatened to shoot officers, Denney determined that it was necessary to search Davis' apartment for parole violations. In light of the fact that there was evidence Davis had been involved in a burglary and might have a gun in the house, Denney had reasonable grounds to believe that Davis had violated several conditions of his parole and that Denney had a duty, independent of the duty of the police, to conduct an investigation to determine the extent of Davis' parole violations.

In sum, had Spinar sought to suppress the evidence seized as a result of the parole search of Davis' apartment, such a motion would have failed. Therefore, the district court correctly denied Davis' postconviction relief on this ground.

### (d) Failure to File Motion for New Trial

Davis next argues that he was provided ineffective assistance of counsel because Spinar failed to file a motion for new trial when Davis requested Spinar to do so.

Davis' motion for postconviction relief does not contain any allegation as to what issues should have been raised in a motion for new trial or what grounds he would have had for raising those issues. More importantly, there are no allegations explaining why the motion would have been successful or how Davis was prejudiced by Spinar's failure to file the motion. See *State v. McGurk*, 3 Neb. App. 778, 532 N.W.2d 354 (1995) (in order to satisfy prejudice prong of *Strickland* analysis, defendant must first make allegation of nature and effect of requisite prejudice).

To the extent that Davis' brief argues that his burden of proof for obtaining relief from his conviction is greater in this postconviction proceeding than it would have been had a motion for new trial been filed, Davis cites no authority for such a proposition, nor does our search disclose any such authority. The showing necessary to obtain relief on direct appeal on the ground of ineffectiveness of counsel is the same as in a postconviction proceeding, provided the record on direct appeal is sufficient to address it. See, e.g., *State v. Dawn*, 246 Neb. 384, 519 N.W.2d 249 (1994).

In sum, the district court properly denied postconviction relief on this ground of alleged ineffectiveness of counsel.

### 2. FAILURE TO APPOINT NEW COUNSEL

In Davis' brief, he states:

> Appellant contacted the Nebraska State Bar Association by letter, prior to the time that trial was to commence, with respect to a complaint against his attorney. *The letter basically recited an inability of the Appellant and his attorney to get along.* Prior to the commencement of trial, by way of letters to his attorney and to the court dated September 6, 1994, 6 days before trial, Appellant communicated the difficulties he was having with his attorney. . . . The letters further reflect a *problem which existed with respect to trial*

> *counsel accepting phone calls, answering questions and communicating with Appellant.*

(Emphasis supplied.) Brief for appellant at 37.

Davis contends that because he had made pretrial complaints against Spinar, a conflict arose and that the trial court was required to appoint substitute trial counsel and failure to do so denied him his Sixth Amendment right to effective counsel. The district court determined:

> [Davis'] complaint to the bar association was merely an expression of his mistrust of, or dissatisfaction with, his appointed counsel, and accordingly, in consideration of the entire record in this case, did not require the appointment of new counsel. Finding no merit to the defendant's conflict of interest claim, [Davis'] request for postconviction relief predicated on this argument is denied.

In *State v. Reddick*, 230 Neb. 218, 430 N.W.2d 542 (1988), the Nebraska Supreme Court addressed a situation nearly identical to the case at bar. The court held:

> The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another; a conflict of interest places a defense attorney in a situation inherently conducive to divided loyalties. [Citation omitted.] Assuming for purposes of argument, but not concluding, that Reddick's complaints against his attorneys created the awkward situation he claims, there is nothing to indicate that this situation was "inherently conducive to divided loyalties." If anything, the attorneys' best defense against Reddick's allegations would have been made by providing Reddick with the very best defense to the criminal charges facing him that was possible. Thus, Reddick's interests and those of his attorneys were in harmony, not at odds.

230 Neb. at 222, 430 N.W.2d at 545.

■ When counsel is court-appointed, the defendant does not have a constitutional right to counsel of his or her choice. *State v. Schlund*, 249 Neb. 173, 542 N.W.2d 421 (1996). A defendant's mere distrust of, or dissatisfaction with, his or her attorney is not a sufficient reason to require appointment of substitute

counsel. *State v. Rosales*, 3 Neb. App. 26, 521 N.W.2d 385 (1994).

The district court properly decided that the trial court's failure to appoint Davis substitute trial counsel did not afford Davis grounds for postconviction relief.

## VI. CONCLUSION

The district court's order denying Davis postconviction relief on the grounds alleged in his motion was correct and is affirmed.

AFFIRMED.