The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Andre Carl McCULLOUGH,
Defendant–Appellee.

No. 99SA317.

Supreme Court of Colorado,
En Banc.

July 3, 2000.

Robert S. Grant, District Attorney Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

David S. Kaplan, Colorado State Public Defender, Paul Crane, Deputy State Public Defender, Brighton, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1, appealing the trial court's order suppressing evidence obtained by parole officers during a routine, unannounced home visit to the defendant's residence. The defendant moved for suppression of the evidence on the basis that the parole officers' warrantless search of his belongings was conducted in violation of his constitutional rights because the officers lacked reasonable grounds to believe that he had committed a parole violation. The trial court agreed that the parole officers lacked reasonable grounds to conduct the search and suppressed the evidence discovered by the officers during the search of the defendant's belongings. We hold that the trial court applied the incorrect legal standard to the parole search by requiring the parole officers to have reasonable grounds to perform the search. Furthermore, we find that the search was conducted in compliance with constitutional standards governing parole searches. Accordingly, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS BELOW

The defendant, Andre McCullough, was released from the Department of Corrections on September 19, 1998, to serve a three-year term of parole. Upon his release, Mr. McCullough signed a standard "Parole Agreement" containing several mandatory conditions,[1] one of which provided, "Parolee further agrees to allow the Parole Officer to search his person, or his residence, or any premises under his control, or any vehicle under his control." After completing a ninety-day intensive supervision period, Mr. McCullough was transferred to the case load of parole officer Margaret Heckenbach in January 1999.

On March 10, 1999, at approximately 5:00 p.m., parole officers Heckenbach and Kelly Messamore, Ms. Heckenbach's supervisor, proceeded to the residence of the defendant for the purpose of conducting an unannounced home visit.[2] Mr. McCullough opened the door, and Ms. Heckenbach and Ms. Messamore entered the apartment and immediately saw several open containers of alcohol.[3] Ms. Heckenbach testified at the suppression hearing that she believed it was Mr. McCullough's roommate, Kevin Hartwell, who was drinking and not Mr. McCullough. Ms. Heckenbach asked Mr. McCullough which room was his and he responded that he slept on the couch but that he kept all of his belongings in a bedroom closet. Mr. McCullough showed Ms. Heckenbach the location of the closet with his belongings. After verifying with Mr. McCullough that all of the belongings in the closet were his, Ms. Heckenbach proceeded to search the belongings in the closet. In the pocket of a jacket in the closet, Ms. Heckenbach discovered a baggie of cocaine. Mr. McCullough was subsequently arrested and charged with Unlawful Possession of a Controlled Substance.[4]

Mr. McCullough moved to suppress the evidence on the basis that it was seized in violation of his rights under the United States and Colorado Constitutions. Mr. McCullough argued that the parole officers did not have reasonable grounds to believe he had committed a parole violation when they searched his belongings. The trial court considered Mr. McCullough's motion at a suppression hearing and found that the fact that someone else in the apartment may have been drinking did not provide reasonable

---

1. In section 17–2–201(5)(f)(I), 6 C.R.S. (1999), the legislature has set out mandatory conditions to be included in every parole agreement.

2. Ms. Heckenbach testified at the suppression hearing that, as part of her duties as a parole officer, she routinely conducts unannounced home visits to her parolees.

3. Mr. McCullough's conditions of parole included the requirement that he have "no alcohol intake or possession" and that he not "possess and/or use illegal drugs."

4. § 18–18–405, 6 C.R.S. (1999).

grounds to search the pocket of the jacket where the cocaine was found. The court considered the subjective view of the parole officers when it analyzed the question of whether reasonable grounds existed and found that the officers conducted the search not because they believed they had reasonable grounds to suspect there was a parole violation, but because they believed they had the authority to do so based on the parole agreement. Therefore, the trial court suppressed the cocaine found by the officers as well as the statements made by the defendant to the officers concerning ownership of the clothing in the closet.

## II. ANALYSIS

This case raises important issues concerning the extent of a parolee's Fourth Amendment protections. The task for us in this case is to determine the legal standard that governs a parole officer's search of a parolee or his belongings. To determine the appropriate legal standard, we first review our precedent governing parole searches. We then examine the parole statute presently in force in Colorado and conclude that the legislature intended to change the existing legal standard when it amended the statute. Accordingly, the next component of our analysis involves a determination of the constitutionality of the parole statute as amended. Finally, we apply this legal standard for parole searches to the undisputed facts before us to determine if the search in the instant case comported with constitutional requirements.

## A. COLORADO CASE LAW

We have considered the constitutionality of a warrantless parole search on only one prior occasion. In *People v. Anderson*, 189 Colo. 34, 536 P.2d 302 (1975), we considered whether a parole officer's warrantless search of the apartment of his parolee, Alvin Lee Anderson, violated the Fourth Amendment. In that case, a parole officer learned of a potential parole violation when Anderson's wife told the parole officer that Anderson was living with her. The officer knew that Anderson had not reported a change of address to him, as required by his parole agreement. The parole officer proceeded to the apartment of Anderson's wife, who was also on parole, to determine if Anderson had established his residence there and had violated his parole. The apartment manager admitted the parole officer into the apartment and, during the search of the apartment, the officer discovered evidence implicating Anderson in a felony theft, for which Anderson was subsequently charged and convicted.

In our analysis of the constitutionality of the search, we first recognized that the Fourth Amendment's prohibition on "unreasonable" searches and seizures [5] applies to searches of parolees but we stated that "what may be a reasonable search when a parolee is the subject of the investigation may be unreasonable when directed against another person." *Id.* at 36, 536 P.2d at 304. Although the parole officer lacked a search warrant, we stated that, in the context of a parole search, "the need for a search warrant is eliminated." *Id.* at 37, 536 P.2d at 305. After reviewing case law from other jurisdictions, we declared that "Colorado will adopt the middle ground. This requires a parole officer who is investigating a parole violation to have reasonable grounds to believe that a parole violation has occurred." *Id.* Applying our holding to the facts in that case, we determined that the search was lawful because the parole officer had "reasonable grounds to enter the apartment to determine whether it was Anderson's established residence." *Id.* at 38, 536 P.2d at 305.

In the instant case, the trial court applied this "reasonable grounds" legal standard in its resolution of the motion to suppress. However, subsequent to *Anderson*, the legislature amended the parole statute with the intention of removing the requirement for

---

5. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but

> upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"reasonable grounds." Therefore, we find that the trial court applied the incorrect legal standard to this search. Our analysis of this issue therefore encompasses an examination of the amended parole statute.

### B. THE PAROLE STATUTE

Twelve years after our decision in *Anderson*, the legislature amended the parole statute by adding a section containing a list of mandatory conditions to be included in every parole agreement.[6] One of these conditions, section 17–2–201(5)(f)(I)(D), provides that a parolee shall "allow the parole officer to make searches of his person, residence, or vehicle." [7]

■ Our first task in interpreting this statute is determining whether the legislature intended to alter the *Anderson* requirement of "reasonable grounds to believe that a parole violation has occurred" when it amended the statute. In interpreting the meaning or scope of any statutory term, our goal is to effectuate the intent of the legislature. *See Regional Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996); *Lakeview Assocs. v. Maes*, 907 P.2d 580, 584 (Colo. 1995). To do so, we look first to the language of the statute itself to determine the legislative intent. *See Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584. If the statutory language is unambiguous, it is unnecessary to resort to rules of statutory construction. *See Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584.

■ In the instant case, we are examining a section of the parole statute that was added by amendment in 1987. When interpreting legislative amendments, we assume that the General Assembly was apprised of existing case law. *See People v. Williams*, 984 P.2d 56, 62 (Colo.1999). Thus, in the instant case, we presume that the legislature was fully aware of the "reasonable grounds" standard annunciated in *Anderson* when it amended the parole statute. Furthermore, when a statute is amended, it is presumed

that the legislature intended to change the law. *See Robles v. People*, 811 P.2d 804, 806 (Colo.1991); *People v. Hale*, 654 P.2d 849, 851 (Colo.1982).

■ With these guidelines in mind, we look now to the statute in question. As noted above, section 17–2–201(5)(f)(I)(D) was added to the parole statute by amendment of the General Assembly in 1987. We note that at the time that we decided *Anderson* and adopted the "reasonable grounds" standard, the parole statute did not contain a section requiring a parolee to submit to searches by his parole officer. The language of the new section added by the General Assembly states directly that all parolees shall allow a parole officer to "make searches of his person, residence, or vehicle." Notably absent from the language of the statute is a requirement for a parole officer to have "reasonable grounds to believe that a parole violation has occurred" before he may conduct a search. Accordingly, the language of the statute is clear and unambiguous. By amending the parole statute to add this search provision subsequent to our decision in *Anderson*, we find that the legislature intended to change the existing law in Colorado by removing the requirement that a parole officer have "reasonable grounds" before he may conduct a search of a parolee or his possessions. We conclude that the legislature intended to give parole officers authority to conduct routine searches of a parolee and his possessions as part of their supervisory authority and without requiring that they first possess "reasonable grounds to believe that a parole violation has occurred."

### C. CONSTITUTIONALITY OF THE PAROLE STATUTE

■ Having concluded that the legislature intended to remove the "reasonable grounds" requirement with the 1987 amendment, we now must consider whether the amendment as enacted violates constitutional

---

**6.** *See* ch. 125, sec. 8, § 17–2–201(5)(f)(I), 1987 Colo. Sess. Laws 650, 653–54.

**7.** This section was embodied in Condition 4(b) of Mr. McCullough's Parole Agreement, to wit:

"Parolee further agrees to allow the Parole Officer to search his person, or his residence, or any premises under his control, or any vehicle under his control."

proscriptions against unreasonable searches and seizures.[8] In reviewing the actions of the General Assembly, we presume that a statute comports with constitutional standards. *See People v. Martinez*, 970 P.2d 469, 472 (Colo.1998); *People v. Holmes*, 959 P.2d 406, 410 (Colo.1998).

■ The Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution proscribe all unreasonable searches and seizures.[9] We have recognized that "the Fourth Amendment is not to be totally ignored merely because of parole status." *Anderson*, 189 Colo. at 37, 536 P.2d at 304. However, as noted above, we also recognized in *Anderson* that "what may be a reasonable search when a parolee is the subject of the investigation may be unreasonable when directed against another person." *Id.* at 36, 536 P.2d at 304. The question for us to answer in the instant case is whether the General Assembly's removal of the requirement for "reasonable grounds to believe that a parole violation has occurred" before a parole search may be conducted violates the Fourth Amendment's prohibition on "unreasonable" searches and seizures. In answering this question, we look to relevant United States Supreme Court case law discussing the minimum requirements for a "reasonable" search and seizure.

■ The Supreme Court has repeatedly stated that whether or not a search is "unreasonable" under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537,

105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); *see also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Thus, the "permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner*, 489 U.S. at 619, 109 S.Ct. 1402 (internal quotation marks omitted). The Court has recognized exceptions to standard Fourth Amendment requirements when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Id.* (internal quotation marks omitted). In *Griffin v. Wisconsin* the Court recognized that a "State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).[10]

■ We find that the State of Colorado's operation of its parole system presents the type of "special needs" that the Supreme Court has recognized as justifying a departure from the usual Fourth Amendment mandates. The parole system serves a very important function in the correctional process. As the Supreme Court has recognized, parole is designed to "help individuals reintegrate into society as constructive individuals as soon as they are able, without being con-

8. We note that the applicable state and federal constitutional provisions share the same analytical framework in the instant case.

9. *See supra* note 5 for the text of the Fourth Amendment. Article II, section 7 of the Colorado Constitution provides:

The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Colo. Const. art. II, § 7.

10. Although *Griffin* is a probation case, its reasoning applies with equal, if not greater, force to the parole system. *See United States v. Hill*, 967 F.2d 902, 909 (3d Cir.1992). As the *Hill* court recognized, both parole and probation are a form of criminal sanction imposed by a court upon an offender after a verdict, finding, or plea of guilty. Moreover, parole may be an even more severe restriction on liberty because the parolee has already been adjudged in need of incarceration. Therefore, the "special needs" of probation discussed in *Griffin* would appear to be heightened for parole.

fined for the full term of the sentence imposed." *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). To accomplish the purpose of parole, "those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms. These conditions restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen." *Id.* at 478, 92 S.Ct. 2593. The *Griffin* Court noted that "[t]hese restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed." *Griffin*, 483 U.S. at 875, 107 S.Ct. 3164.

The parole officer plays a unique role in assisting the parolee in his quest to reintegrate into society. The *Morrissey* Court discussed the role of the parole officer as such:

> The parole officers are part of the administrative system designed to assist parolees and to offer them guidance. The conditions of parole serve a dual purpose; they prohibit, either absolutely or conditionally, behavior that is deemed dangerous to the restoration of the individual into normal society. And through the requirement of reporting to the parole officer and seeking guidance and permission before doing many things, the officer is provided with information about the parole[e] and an opportunity to advise him. The combination puts the parole officer into the position in which he can try to guide the parolee into constructive development.

*Morrissey*, 408 U.S. at 478, 92 S.Ct. 2593. In order to successfully perform their job and fulfill their role in the correctional system, parole officers must have the ability to effectively supervise their parolees. This supervision is essential to the rehabilitation of the parolee. The ability to conduct surprise searches of parolees, even without specific reason to believe that the parolee has committed a violation, serves as a powerful deterrent to parole violations and as an invaluable aid in the parole officer's efforts to assist in the parolee's rehabilitation.

In addition to the importance of supervision to the rehabilitation of the parolee, supervision is also vitally important to the State's interest in protecting the community during the parolee's completion of his sentence. We recognized in *Anderson* that "parolees, as a class, pose a greater threat of criminal activity to law enforcement authorities than ordinary citizens." *Anderson*, 189 Colo. at 37, 536 P.2d at 304. The Supreme Court in *Morrissey* acknowledged that "[r]elease of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts." *Morrissey*, 408 U.S. at 483, 92 S.Ct. 2593. In *Pennsylvania Board of Probation & Parole v. Scott* the Court noted the State's "overwhelming interest" in ensuring that a parolee complies with the conditions of his release. 524 U.S. 357, 365, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). The Court pointed out that "parolees ... are more likely to commit future criminal offenses than are average citizens. Indeed, this is the very premise behind the system of close parole supervision." *Id.* (citation omitted). In *Griffin* the Court upheld a probation officer's warrantless search of a probationer's apartment, recognizing that "[s]upervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Griffin*, 483 U.S. at 875, 107 S.Ct. 3164.

The Supreme Court has also indicated that the Fourth Amendment does not require a showing of individualized suspicion before a search may comport with its "reasonableness" requirement.

> [W]e have usually required some quantum of individualized suspicion before concluding that a search is reasonable. We made it clear, however, that a showing of individualized suspicion is *not* a constitutional floor, below which a search must be presumed unreasonable. In limited circumstances, where the privacy interests implicated by the search are minimal, and

where an important government interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.

*Skinner*, 489 U.S. at 624, 109 S.Ct. 1402 (internal quotation marks omitted, citations omitted, emphasis added). As section 17–2–201(5)(f)(I)(D) requires all parolees to sign a written agreement indicating they will allow a parole officer to search his person, residence, or vehicle, we observe that the privacy interests of a parolee, while not nonexistent, are certainly minimal. In addition, as the Supreme Court has recognized, the State maintains an overwhelming interest in ensuring that a parolee complies with the conditions of his parole. *See Scott*, 524 U.S. at 365, 118 S.Ct. 2014. Requiring individualized suspicion would eliminate a powerful deterrent to parole violations and, consequently, would place in jeopardy the State's overwhelming interest in ensuring that a parolee complies with the conditions of his parole.

▉ Upon review of the relevant case law, we conclude that the amended statute passes constitutional scrutiny under the Fourth Amendment's proscription against unreasonable searches and seizures. Although we conclude that the statute is constitutional, we also recognize that the mere fact that a person is on parole does not automatically justify any warrantless search by a parole officer. *See Griffin*, 483 U.S. at 873, 107 S.Ct. 3164. Accordingly, it follows that there are limits on what may constitute a permissible parole search. We hold that a warrantless parole search is constitutional, even in the absence of "reasonable grounds," if the search meets the following requirements: (1) it is conducted pursuant to any applicable statute; (2) it is conducted in furtherance of the purposes of parole, i.e., related to the rehabilitation and supervision of the parolee; and (3) it is not arbitrary, capricious, or harassing.[11] In reaching our holding today, we join other jurisdictions that have reached similar holdings for parole and probation searches. *See, e.g., Owens v. Kelley,*

681 F.2d 1362, 1368–69 (11th Cir.1982) (holding warrantless search provision in probation agreement is valid under Fourth Amendment without reasonable suspicion as long as search is in furtherance of purposes of probation and not harassing); *People v. Reyes,* 19 Cal.4th 743, 80 Cal.Rptr.2d 734, 968 P.2d 445, 451 (1998) (holding particularized suspicion is not required to conduct a parole search when search is based on a search provision and is not arbitrary or oppressive); *State v. Morgan,* 206 Neb. 818, 295 N.W.2d 285, 289 (1980) (holding warrantless search provision in probation agreement is constitutionally valid when it contributes to rehabilitation process and search is conducted in a reasonable manner); *State v. Davis,* 6 Neb.App. 790, 577 N.W.2d 763, 770–71 (1998) (holding warrantless search of parolee is valid under "special needs" of parole system); *State v. Zeta Chi Fraternity,* 142 N.H. 16, 696 A.2d 530, 540–41 (1997) (holding search provision in probation agreement authorizing random warrantless searches is constitutional if related to the rehabilitation or supervision of probationer and search is reasonable in time, scope, and frequency); *State v. Smith,* 589 N.W.2d 546, 548 (N.D.1999) (holding reasonable suspicion is not constitutionally required for a warrantless probation search when conducted in a reasonable manner).

We turn now to a discussion of these requirements. The first requirement is that the search be conducted pursuant to any applicable statute. Our statute currently requires a search provision to be contained in a written agreement signed by the parolee. *See* § 17–2–201(5)(f)(I). The search provision must contain language putting the parolee on notice that he is required to submit to searches of his person, residence, or vehicle as a condition of his parole.

The second requirement is that the search must be conducted in furtherance of the purposes of parole. In order to satisfy this requirement, the search must be carried out under the authority of a parole officer. This is not to say that a parole officer may not

---

**11.** Although both the probation and parole systems present similar "special needs," we note that the probation system is operated under a different statutory scheme than the parole system. We therefore limit our holding today to parole searches and express no opinion on the constitutionality of a warrantless probation search.

request that police officers accompany her during the search. To the contrary, we recognize that for the parole officer's safety it may sometimes be necessary to enlist the assistance of police officers. The presence of police officers during a parole search does not, in and of itself, indicate that the search was not conducted in furtherance of the purposes of parole. However, these searches may not be conducted simply as a subterfuge for criminal investigations. "[They] may not be done for the prime purpose of circumventing the ordinary constitutional processes for the convenience of law enforcement officers in the course of their investigation." *People v. Way*, 319 N.Y.S.2d 16, 21 (Nassau County Ct.1971).[12] A parole officer must authorize the search and will normally be present during the search,[13] and the search itself must be related to the rehabilitation and supervision of the parolee.

The third requirement that the search not be arbitrary, capricious, or harassing is designed to prevent abuses of the parole officer's authority to search. Some examples of what may constitute abuse include searches conducted at an unreasonable hour, searches that are unreasonably prolonged, or frequent and repeated searches that are intended only to harass. Any evidence indicating arbitrary or oppressive conduct by a parole officer should be considered in determining whether the officer has exceeded constitutional limitations.[14]

12. In *Way*, police contacted the parole officer and told him that his parolee was a suspect in a robbery. The parole officer took no steps to visit or interview his parolee until the police contacted the parole officer again two weeks later and requested that he accompany them on a search of the parolee's house for the purpose of investigating the robbery. The court found that the parole officer had become "nothing more than the alter ego of the detectives," stating, "This case does not present the usual situation where a parole officer may engage the services of the local policeman on the beat to protect him while he is engaged in searching a parolee or his home. Reference to the facts found herein demonstrate that the police were not mere bystanders but that they inspired, initiated, arranged and actively participated in every phase of the search and seizure." *Way*, 319 N.Y.S.2d at 23, 24.

13. We emphasize that the purpose of the search, not the presence or absence of a parole officer

## D. THE SEARCH IN THE INSTANT CASE

Having determined the appropriate legal standard to be applied, our final task is to apply this standard to the search conducted in this case. We accord deference to the trial court's findings of fact and will not overturn them provided they are supported by competent evidence in the record. *See People v. Thomas*, 853 P.2d 1147, 1149 (Colo.1993). An ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings, however, is subject to correction by a reviewing court, as is a court's application of an erroneous legal standard to the facts of the case. *See People v. Quezada*, 731 P.2d 730, 732–33 (Colo.1987). When the controlling facts are undisputed, the legal effect of those facts constitutes a question of law which is subject to de novo review. *See People v. D.F.*, 933 P.2d 9, 15 (Colo.1997). Although the trial court did not have the benefit of our holding today when ruling on the suppression motion, we find it appropriate to apply our holding to the undisputed facts before us. As we stated in *D.F.*, "In exercising our appellate function in the context of an interlocutory appeal, we are conscious that the liberty interests of defendant and the public interest in the prosecution of criminal offenses are to be addressed in a manner which does not unnecessarily delay the ultimate disposition of the case." *Id.* at 15 n. 5.

during the search, is the dispositive factor in determining whether a search was conducted in furtherance of the purposes of parole. *See United States v. Coleman*, 22 F.3d 126, 129–30 (7th Cir.1994); *People v. Kanos*, 14 Cal.App.3d 642, 92 Cal.Rptr. 614, 617 (1971). The presence or absence of a parole officer during a parole search is one factor a court may consider in determining whether the search was, in fact, conducted in furtherance of the purposes of parole.

14. We note that the second and third requirements should be evaluated objectively from the perspective of a reasonable parole officer. *See People v. Woods*, 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019, 1027 (1999) (holding that objective standard applies to parole searches to discourage disparate results resulting from validity of searches turning on officer's subjective intent).

■ Applying our holding to the undisputed facts before us, we find that the parole officers' search of Mr. McCullough's belongings was constitutional. The search was conducted by Mr. McCullough's parole officers as part of their routine supervisory duties and complied with the three requirements for parole searches discussed above. First, the search was conducted pursuant to the applicable parole statute, section 17–2–201(5)(f)(I), as Mr. McCullough's signed parole agreement contained a provision authorizing his parole officer to "search his person, or his residence, or any premises under his control, or any vehicle under his control." Second, Ms. Heckenbach's purpose in searching Mr. McCullough's belongings was to determine whether Mr. McCullough was in violation of any of his parole conditions. As noted above, one of Mr. McCullough's parole conditions prohibited him from possessing or using illegal drugs. Ms. Heckenbach's search of Mr. McCullough's jacket pocket was reasonably aimed at determining if Mr. McCullough was in possession of any illegal drugs; thus, the search was conducted in furtherance of the purposes of parole. Finally, there is undisputed evidence that the search was not arbitrary, capricious, or harassing. The search was conducted at a reasonable time, 5:00 p.m. in the afternoon, was reasonable in its scope, and was not unnecessarily prolonged. Additionally, the evidence is undisputed that Ms. Heckenbach and Ms. Messamore conducted the search in a professional manner. Therefore, we find that the search of Mr. McCullough's belongings complied with constitutional requirements.[15]

## III. CONCLUSION

In sum, we conclude that the legislature altered the *Anderson* "reasonable grounds" requirement when it enacted the 1987 amendment to the parole statute. Accordingly, we find that the trial court applied the incorrect legal standard to the search in the instant case. We hold that a warrantless parole search is constitutional if it is conducted pursuant to any applicable statute, is in furtherance of the purposes of parole, and is not arbitrary, capricious, or harassing. Upon de novo review of the undisputed facts, we conclude that the search in this case comported with these constitutional requirements. As such, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

Justice MARTINEZ, specially concurring.

I concur in the judgment of the court that the evidence seized during a search of McCullough's home is admissible. I do not, however, accept the reasoning upon which the court relies for this conclusion. The majority supports its holding by unnecessary and inaccurate statutory and constitutional analyses and views United States Supreme Court precedent as support for its proposition that the Fourth Amendment's requirement of reasonableness is not violated by searches without reasonable grounds for the parole officer to believe that a parole violation has occurred. The majority arrives at this holding even though the search in this case is supported by reasonable grounds. Moreover, the majority addresses the constitutional issue only after engaging in statutory interpretation which I believe to be incorrect. Therefore, I respectfully concur in the result only.

### I.

By finding that section 17–2–201, 6 C.R.S. (1999), eliminates the requirement that "reasonable grounds" support parole searches, and that this statute as interpreted is constitutional, the majority reaches further than is necessary to settle the dispute before us. The trial court's order suppressing the evidence seized pursuant to a parole search of the defendant's home should be reversed because the court applied an incorrect legal standard and suppressed evidence even though it found that the parole officers had reasonable grounds to search.

I therefore begin with a discussion of the narrow grounds upon which resolution of this case rests. The trial court applied a subjec-

---

15. As we stated in *Anderson*, evidence seized within the scope of a reasonable parole search, even though unrelated to the parole violation, is admissible in the prosecution of another crime. *See* 189 Colo. at 38, 536 P.2d at 305.

tive intent standard to determine the propriety of the parole officer's search. Our case law clearly establishes that an objective standard of review governs a motion to suppress evidence obtained pursuant to a search or seizure. Because the trial court applied the wrong legal standard in determining the propriety of the search, its suppression order must be reversed. *See People v. Weston,* 869 P.2d 1293, 1298 (Colo.1994).

In making its suppression order, the trial court found that McCullough's arrest in January 1999 for possession of a controlled substance was an objectively reasonable basis for the parole officer to conduct the search at issue in this case. However, the trial court ruled that the search was impermissible because it also found that the parole officers subjectively relied on a signed parole agreement to conduct the search.[1] As the prosecution correctly argues, application of a subjective intent standard of review to the question whether a search is permissible is inconsistent with our prior decisions. A reviewing court, to determine whether a search was lawful, must ask if objectively reasonable grounds existed to justify the search. *See People v. Mendoza–Balderama,* 981 P.2d 150, 157 (Colo.1999); *People v. Rodriguez,* 945 P.2d 1351, 1359–60 (Colo.1997). While the officer's subjective assessment of the facts may assist a court to understand the situation confronting the officer at the time of the search, or may affect the officer's credibility, an officer's illicit subjective motive is not sufficient to invalidate an otherwise proper search. *See Rodriguez,* 945 P.2d at 1360; *see also Whren v. United States,* 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

We have applied this analysis in numerous cases involving challenged searches or seizures. *See, e.g., People v. Daverin,* 967 P.2d 629, 632 (Colo.1998); *People v. Dumas,* 955 P.2d 60, 63 (Colo.1998); *People v. Altman,* 938 P.2d 142, 146 (Colo.1997); *People v.*

*Hauseman,* 900 P.2d 74, 78 (Colo.1995); *Weston,* 869 P.2d at 1298; *People v. Ratcliff,* 778 P.2d 1371, 1376 (Colo.1989). In my view, the same rationale underlying the objective standard in other cases applies with equal force to parole searches. *See Rodriguez,* 945 P.2d at 1360; *People v. Woods,* 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019, 1027 (1999).

It follows that in this case the trial court erred in basing the validity of the search on the searching officers' subjective intent. Application of an erroneous legal standard requires reversal of the trial court's suppression order. *See Weston,* 869 P.2d at 1298. Moreover, because the trial court correctly found that objectively reasonable grounds existed to search McCullough's home, I agree with the majority that the evidence seized pursuant to the search is admissible.

Therefore, this case does not present the issues decided by the majority. However, given the importance of these issues, I now turn to those aspects of the majority opinion.

## II.

### A.

I first look to the majority's argument that the language of section 17–2–201 shows an unambiguous legislative intent to abandon the "reasonable grounds" requirement for parole searches we set forth in *People v. Anderson,* 189 Colo. 34, 536 P.2d 302 (1975). The statute is facially silent on whether "reasonable grounds" is required for parole searches. Therefore, I cannot agree with the majority that the plain language of section 17–2–201 evinces the General Assembly's intent to no longer require "reasonable grounds" for parole searches.

Section 17–2–201(5)(f)(I)(D) states, in pertinent part, that "the parolee shall ... allow the parole officer to make searches of his person, residence, or vehicle." Because the

---

1. I disagree with the majority's claim that the trial court "applied [the] 'reasonable grounds' legal standard in its resolution of the motion to suppress." Maj. op. at 777–778. While the trial court *found* that reasonable grounds existed for the search, and stated that the search would have been permissible if the searching officers had in

fact relied on those grounds, the trial court *applied* a subjective intent standard to find that the search was impermissible. The trial court would not have held that the search was impermissible if it had applied the reasonable grounds standard, given its ruling that reasonable grounds existed for the search.

General Assembly did not explicitly include the *Anderson* "reasonable grounds" requirement in this provision, the majority concludes that the legislature intended to eliminate the requirement of reasonable grounds for parole searches. *See* maj. op. at 778. The language of the statute, the majority asserts, is "clear and unambiguous" *id.* at 778, therefore we need not look to additional rules of statutory construction to determine the legislative intent underlying the 1987 amendment of section 17–2–201. *See id.* at 777. I cannot agree.

Section 17–2–201 is silent on the question of whether reasonable grounds to believe that a parole violation has occurred must underlie a search. This silence is not independently sufficient grounds upon which to conclude that reasonable grounds are not required. The statute's plain language is logically consistent either with requiring or not requiring reasonable grounds; it simply does not address the issue at all.

Consequently, the statute's language neither clearly nor unambiguously evinces the legislative intent behind its enactment. Section 17–2–201(5)(f)(I)(D) also fails to "state directly," maj. op. at 778, that parole searches "must be conducted in furtherance of the purposes of parole" and must "not be arbitrary, capricious, or harassing." Maj. op. at 781, 782. By parity of reasoning, therefore, we ought to conclude that the General Assembly did not intend for any of those requirements to govern parole searches. Thus, the majority's analysis of what it finds

to be a "clear and unambiguous" legislative intent is not persuasive.[2] *See Regional Transp. Dist. v. Lopez,* 916 P.2d 1187, 1192 (Colo.1996) (function of statutory interpretation is to effectuate the intent of the legislature).

In *Anderson,* 189 Colo. at 37, 536 P.2d at 305, we held that "reasonable grounds" for a parole search was required for the search to be constitutionally permissible. Therefore, we should presume that the General Assembly intended to implicitly retain the "reasonable grounds" requirement. *See Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997) (stating that the legislature is presumed to be aware and adopt the construction of prior judicial decisions in an area of law when it legislates in that area).

This case does not present the question of whether section 17–2–201[3] eliminates the *Anderson* "reasonable grounds" requirement. Here, the trial court simply applied an incorrect subjective legal standard in ruling on the defendant's motion to suppress. Further, the parole officers' search was based on adequate grounds for a search. The majority proceeds to discern the meaning of section 17–2–201 when doing so can have no possible meaningful effect on the disposition of the case before us.

Our prior decisions clearly and unambiguously bar such an approach to this case. As we stated in *People v. Lybarger,* 700 P.2d 910, 915 (Colo.1985), it is "[a]xiomatic to the exercise of judicial authority . . . that a court should not decide a constitutional issue un-

---

2. In addition, that a parolee under section 17–2–201 is obligated to allow his parole officer to search his person, residence or vehicle does not establish clearly or unambiguously that the General Assembly intended to abandon the "reasonable grounds" standard. *See* maj. op. at 778. This requirement is logically consistent with the additional requirement that a search is permissible only if the searching officer has reasonable grounds to believe that a parole violation has occurred. *See Griffin v. Wisconsin,* 483 U.S. 868, 870–71, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (analyzing Wisconsin probation statute that required reasonable grounds for searches *and* made it a probation violation to refuse consent to a home search).

3. Whether the *Anderson* "reasonable grounds" requirement or another, lesser standard governs

parole searches, if there are in fact reasonable grounds for the search, then the search is constitutionally sound. Under *Anderson,* the existence of reasonable grounds is the minimum showing that the prosecution must make for evidence seized pursuant to a parole search to be admissible. *See Anderson,* 189 Colo. at 38, 536 P.2d at 305. Under a lesser standard, proof of reasonable grounds would constitute more than necessary evidence that the search was reasonable. In either case, the evidence seized in this case is admissible against the defendant. Therefore, this court need not attempt to determine whether section 17–2–201 incorporated the "reasonable grounds" requirement. The majority's reliance on what I can only see as an unwarranted interpretation of the "plain language" of the statute further complicates proper resolution of this case.

less and until such issue is actually raised by a party to the controversy and *the necessity for such decision is clear and inescapable.*" (Emphasis added.) We have long recognized and adhered to this principle. *See, e.g., Ricci v. Davis,* 627 P.2d 1111, 1121 (Colo.1981) ("It is well settled that a court will not rule on a constitutional question which is not essential to the controversy before it."); *Friedman v. Motor Veh. Div. of Dep't of Revenue,* 194 Colo. 228, 229, 571 P.2d 1086, 1087 (1977); *Weissman v. Board of Ed. of Jefferson County Sch. Dist. No. R–1,* 190 Colo. 414, 419, 547 P.2d 1267, 1271 (1976); *Times–Call Publ'g Co. v. Wingfield,* 159 Colo. 172, 177, 410 P.2d 511, 513 (1966).

### B.

After concluding that the General Assembly intended to remove the *Anderson* "reasonable grounds" requirement for parole searches, the majority addresses whether a search conducted without reasonable grounds is constitutionally permissible. As I have explained, it is not necessary to consider whether the General Assembly removed the "reasonable grounds" requirement. Therefore, I do not believe that it is appropriate for this court to consider the constitutional status of section 17–2–201 as interpreted by the majority.

In determining that a parole search conducted without reasonable grounds is permissible under the constitutional proscription against unreasonable searches and seizures, *see* maj. op. at 780–781, I believe that the majority misapplies United States Supreme Court and lower court precedent. Therefore, I cannot accept the conclusion that section 17–2–201 as interpreted by the majority satisfies the minimum constitutional standards of reasonableness. In my judgment, the majority's constitutional analysis rests on three crucial errors: (1) the mistaken conclusion that *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) sanctions parole searches not based on reasonable grounds; (2) a misinterpretation of the Supreme Court's standard for determining whether individualized suspicion of wrongdoing is required for a search or seizure; and (3) a misapplication of lower court cases in which parole or probation searches were allowed without a finding of reasonable grounds.

### 1.

I look first to the majority's interpretation and application of *Griffin. See* maj. op. at 779–781. In *Griffin,* 483 U.S. at 872, 107 S.Ct. 3164, the Supreme Court considered whether probation searches must be based on a warrant or probable cause. At issue was a Wisconsin statute that mandated searches of a probationer's home if: (1) the probation officer had "reasonable grounds" to believe that a probation violation had occurred; and (2) the reasonable grounds were based on a number of statutorily identified factors. *See id.* at 870–71, 107 S.Ct. 3164. The petitioner in *Griffin* was a probationer about whom the probation department had received a tip from the police. *See id.* at 871, 107 S.Ct. 3164. The police claimed that Griffin had or might still have guns in his residence, in violation of his probation agreement. *See id.* A probation officer and several police officers went to Griffin's home and conducted a search, which disclosed a handgun. *See id.* Petitioner was charged with possession of a firearm by a convicted felon and sentenced to two-years' imprisonment. *See id.* at 872, 107 S.Ct. 3164.

The Wisconsin Supreme Court found that the evidence seized pursuant to the search was admissible and affirmed the conviction. *See id.* The court held that a requirement of "reasonable grounds" for probation searches is consistent with a probationer's reasonable expectation of privacy. *See id.* Moreover, the police tip constituted reasonable grounds for the search under Wisconsin's statute. *See id.*

The Supreme Court held that the statute satisfied the Fourth Amendment requirement of reasonableness. *See id.* at 873, 107 S.Ct. 3164. The *Griffin* majority grounded its holding in the proposition that effective supervision of probationers is "a special need, beyond the normal need for law enforcement, [that] make[s] the warrant and probable-cause requirement impracticable." *Id.* (internal quotation marks and citation omitted). *Id.* at 873, 107 S.Ct. 3164; *see also id.* at 873–74, 107 S.Ct. 3164.

The Court then asked whether the "special needs" associated with probation supervision justified the impingement of the probationer's privacy by a home search based on "reasonable grounds" to believe that a probation violation had occurred. *See id.* at 875, 107 S.Ct. 3164. As I explain in more detail *infra,* it is critical for the purpose of understanding the relevance of *Griffin* to the case before us that the Court analyzed the statute as it had been interpreted by the Wisconsin Supreme Court. *See id.* at 875–76, 107 S.Ct. 3164. That is, the Court tied its Fourth Amendment analysis to the Wisconsin Supreme Court's determination that a statute requiring "reasonable grounds" for a probation search was consistent with a probationer's reasonable expectation of privacy and that such grounds existed in the case before it. *See id.* at 875, 107 S.Ct. 3164. Under that analytical framework, the Court concluded that "[w]e think it clear that the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify replacement of the standard of probable cause by 'reasonable grounds,' as defined by the Wisconsin Supreme Court." *Id.* at 876, 107 S.Ct. 3164.

I need not examine the Court's arguments for its holding that "the special needs of Wisconsin's probation system make the warrant requirement impracticable," *see id.* at 876–79, 107 S.Ct. 3164, because those issues are irrelevant to the matter before us. We are not deciding whether parole searches in Colorado must be backed by a warrant or probable cause. The answer to that question clearly is no, as *Anderson* itself indicates. *See Anderson,* 189 Colo. at 37–8, 536 P.2d at 304–05. Instead, the issue the majority has placed before this court is whether parole searches not backed by *reasonable grounds* are consistent with the minimum constitutional requirement of reasonableness.

*Griffin* provides no assistance in resolving that issue. The Court in *Griffin* only stated that a probation search founded on what the Wisconsin Supreme Court determined to be reasonable grounds, without a warrant or probable cause, is permissible under the Fourth Amendment. *See, e.g., id.* at 872, 107 S.Ct. 3164 ("We think the Wisconsin Su-preme Court correctly concluded that this *warrantless* search did not violate the Fourth Amendment.") (emphasis added); *id.* at 873–74, 107 S.Ct. 3164 ("A State's operation of a probation system ... likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual *warrant and probable cause requirements.*") (emphasis added); *id.* at 875–76, 107 S.Ct. 3164 ("We think it clear that the special needs of Wisconsin's probation system make the *warrant requirement* impracticable and justify replacement of the standard of *probable cause* by *"reasonable grounds,"* as defined by the Wisconsin Supreme Court.") (emphasis added); *id.* at 878, 107 S.Ct. 3164 ("We think that the probation regime would also be unduly disrupted by a requirement of *probable cause.*") (emphasis added).

*Griffin,* therefore, only establishes that the "reasonable grounds" requirement is a *sufficient* protection for a probationer's Fourth Amendment interests. *See id.* at 880 n. 8, 107 S.Ct. 3164 ("[T]he only regulation upon which we rely for our constitutional decision is that which permits a warrantless search on 'reasonable grounds.'"). The decision does not establish, as the majority argues, that the "reasonable grounds" requirement is not a *necessary* condition for valid searches of a parolee's home. Indeed, the Court never asks whether "reasonable grounds" is required for the type of search at issue in this case. The Court only states that when reasonable grounds are present for a probation officer to believe a probation violation has occurred, search of a probationer's home is reasonable under the Fourth Amendment. At times the majority in this case appears to recognize that the issue in *Griffin* was whether probation searches require a warrant or probable cause. *See, e.g.,* maj. op. at 780. Inexplicably, however, the majority also relies on *Griffin* for its holding that a parole search not backed by "reasonable grounds" is permissible under the prohibition against unreasonable searches and seizures.

2.

Another element of the majority's constitutional analysis is the proposition that individualized suspicion of wrongdoing is not neces-

sary for parole searches. *See* maj. op. at 780–781. The majority's discussion of this proposition provides no more support for its holding than does its application of *Griffin.*

The majority cites *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), for the principle that "a showing of individualized suspicion is *not* a constitutional floor, below which a search is presumed unreasonable." Maj. op. at 780–781. As the majority correctly notes, individualized suspicion of wrongdoing is not required for a search to be reasonable if "the privacy interests implicated by the search are minimal, and [if] an important government interest furthered by the intrusion would be jeopardized by a requirement of individualized suspicion." *Skinner,* 489 U.S. at 624, 109 S.Ct. 1402. The majority asserts that these conditions are satisfied here. I do not agree.

The majority first states that under section 17–2–201 "the privacy interests of a parolee, while not nonexistent, are certainly minimal." Maj. op. at 781. This conclusion is premised on the majority's interpretation of the statute, one that is, as I have explained, unconvincing. It is not at all clear that the General Assembly intended to eliminate the "reasonable grounds" requirement for parole searches when it amended section 17–2–201. *See supra* Part II.A. This court should require clearer evidence of legislative intent than that which is available to us in this case before dramatically curtailing the privacy interests of a class of our citizens.

The majority also claims that "[r]equiring individualized suspicion ... would place in jeopardy the State's overwhelming interest in ensuring that a parolee complies with the condition of his parole." Maj. op. at 781. While the majority recites the relevant language from *Skinner,* it does not provide any manner of explanation as to why individualized suspicion bars effective parole supervision. *Cf. Skinner,* 489 U.S. at 619–33, 109 S.Ct. 1402 (providing a detailed explanation of the grounds justifying departure from the individualized suspicion requirement for drug testing railway employees). There is no showing before us that the effectiveness of Colorado's parole system has been threatened over the last quarter-century, since *Anderson* was decided, by a requirement of individualized suspicion for searches. Further, the majority cites to no holding that individualized suspicion of wrongdoing poses a grave threat to effective supervision of parolees. *See infra* Part II.B.3 for discussion of cases relied on by the majority.

It is also instructive to observe that, had the General Assembly believed that individualized suspicion was no longer necessary for parole searches, we reasonably could expect it to have been explicit in that determination. Instead, based on the majority's own understanding, the legislature only implicitly abandoned *Anderson.* In sum, the majority has not demonstrated that its holding satisfies the core Fourth Amendment requirement that a person's privacy interests "be invaded no more than necessary to achieve" the governmental interest involved. *New Jersey v. T.L.O.,* 469 U.S. 325, 343, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

Additionally, the majority diverges from applicable Supreme Court decisions in the type of searches it countenances absent individualized suspicion of wrongdoing. The Court has allowed searches not based on individualized suspicion of wrongdoing in very limited circumstances. In almost all cases allowing such searches, the state action was "routinized, fleeting, and nonintrusive encounters conducted pursuant to regulatory programs which entailed no contact with the person." *Skinner,* 489 U.S. at 638, 109 S.Ct. 1402 (Marshall, J., dissenting), citing *United States v. Martinez–Fuerte,* 428 U.S. 543, 562, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (discussing brief interrogative stop at permanent border crossing); *Camara v. Municipal Court of San Francisco,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (upholding routine annual housing inspection by city housing departments). In other instances, searches have been allowed only upon the occurrence of a statutorily defined triggering incident and compelling evidence was presented that serving the governmental interest involved requires jettisoning individualized suspicion. See, e.g., *Skinner,* 489 U.S. at 629–30, 109 S.Ct. 1402 (stating that blanket policy of drug testing rail employees

following accidents is necessary to protect public safety).

In contrast, the majority sanctions searches of an entirely different order, searches that will intrude into every sphere of a parolee's privacy. The only limitations the majority sees fit to place on these far-reaching searches are that: "(1) [they are] conducted pursuant to any applicable statute; (2) [they are] conducted in furtherance of the purposes of parole, i.e. related to the rehabilitation and supervision of the parolee; (3) [they are] not arbitrary, capricious, or harassing." Maj. op. at 781. These "restrictions" provide no effective guidance for searches that intrude upon, in addition to a parolee's vehicle, her person or home, which are a person's most important spheres of privacy and dignity. *See Schmerber v. California*, 384 U.S. 757, 765, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (stating that "[t]he over-riding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State."); *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there to be free from unreasonable governmental intrusion.").

Looking first to the condition that a parole search must be conducted pursuant to applicable statutes, I observe that this requirement contributes little to the reasonableness of the search. A parole search is reasonable under section 17–2–201 only if the statute itself is consistent with the Fourth Amendment reasonableness requirement. The majority's analysis of parole searches conducted absent reasonable grounds fails to carry this essential point. Therefore, that a parole search is conducted pursuant to section 17–2–201 does not establish that the search is reasonable.

The majority next states that the search must be conducted in furtherance of a parolee's rehabilitation and supervision. This condition is explained as having essentially two features: the search must be conducted under the authority of a parole officer and it may not be a subterfuge for a criminal investigation. *See* maj. op. at 782. I agree with the majority that a parole search conducted under the authority of a police officer or as a criminal investigation is not reasonable.

However, these limitations are not sufficient to protect a parolee's privacy interests. The parole officer is free to extensively search a parolee's body, clothing, possessions, residence, and vehicle. No prior showing of the need for a search is required beyond the parole officer's unconstrained judgment that the search somehow is related to rehabilitating or supervising the parolee. The issue is not whether parole officers will act from improper motives under the majority's new rule. My concern instead is that this rule unnecessarily erodes a parolee's privacy interests and fails to provide parole officers and courts with a practicable standard for determining when a search is reasonable.

Finally, the majority states that a parole search may not be "arbitrary, capricious, or harassing." Maj. op. at 782. I find that this condition contributes little toward establishing that searches absent reasonable grounds are constitutionally permissible. This final criterion strikes me as little more than an obvious complement to the majority's second criterion that a search be in furtherance of the purposes of parole. If a search in fact furthers the purposes of parole, then, by definition, it is not arbitrary, capricious, or harassing. A search that is arbitrary, capricious, or harassing cannot, again by definition, further a legitimate purpose of parole.

I conclude that the majority's sanctioning of parole searches without individualized suspicion of wrongdoing goes far beyond Supreme Court precedent and fails to adequately guide parole officers and courts in determining whether a search is reasonable.

3.

Finally, the majority argues that its holding is consistent with a handful of decisions from other jurisdictions that, according to the majority, have held that parole or probation searches are permissible absent a "reasonable grounds" requirement. However, a careful examination of the cases the majority

cites indicates that they are readily distinguishable from the position taken by the majority.

Some of the cases relied on by the majority are similar to *Griffin* in that they address only whether a warrantless probation or parole search is permissible. *See, e.g., Owens v. Kelley*, 681 F.2d 1362, 1365 (11th Cir.1982) (stating that issue before the court is whether warrantless searches by probation officers violates the Fourth Amendment); *id.* at 1368 ("We thus conclude that a probationer's Fourth Amendment right to be free from unreasonable searches and seizures is not violated by a condition of probation that permits warrantless searches of his person and property ... "); *State v. Davis*, 6 Neb.App. 790, 577 N.W.2d 763, 769 (1998) (stating that a warrantless search of parolee's apartment was permissible); *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285, 289 (1980) (stating that a warrantless search of probationer's residence was permissible). Like *Griffin*, these cases do not present the question whether "reasonable grounds" is required for a probation or parole search to be reasonable. Therefore, they provide little support for the majority's claim that a search conducted without reasonable grounds to believe that a parole violation has occurred satisfies minimum constitutional standards. *See* maj. op. at 781.

Additionally, many of the cases identified by the majority do not support a universal policy of allowing parole searches without a "reasonable grounds" requirement. At most, they suggest that whether a probation or parole search without reasonable grounds is permissible is related to the specific supervision needs present in a given instance. In *Morgan*, 295 N.W.2d at 288, the Nebraska Supreme Court, after discussing whether warrantless probation searches are in principle permissible, stated that "such conditions should be sparingly imposed and should be reasonably related to the offense for which the defendant was convicted." In *State v. Zeta Chi Fraternity*, 142 N.H. 16, 696 A.2d 530, 539 (1997), the New Hampshire Supreme Court relied on the trial court's findings that the defendant's prior offenses necessitated unannounced searches to achieve the purposes of probation to uphold the challenged search. Moreover, the search at issue in *Zeta Chi* was warrantless, not one without reasonable grounds to believe that a probation violation had occurred. *See id.* In *State v. Smith*, 589 N.W.2d 546, 550 (N.D. 1999), the North Dakota Supreme Court upheld a warrantless probation search in light of the nature of the activities the defendant was suspected of engaging in. Moreover, North Dakota's probation statute allows the sentencing court to require at its discretion warrantless probation searches. *See id.* at 548–49. In contrast, section 17–2–201 applies to all parolees. *See* § 17–2–201(5)(f)(I).

In short, almost all of the cases cited by the majority only permit warrantless parole or probation searches when circumstances indicate that such searches are necessary on a selected basis to secure the governmental interests at stake. This practice is starkly different from the majority's conclusion that a universal policy of parole searches without individualized suspicion of wrongdoing meets minimum constitutional standards.

### III.

This case should be resolved on well-settled principles of law. The trial court's suppression order should be reversed because it was based on an assessment of the subjective intent of the searching officers. Under the proper standard of objective reasonableness, the evidence seized pursuant to the search is admissible against the defendant.

However, the majority disregards this resolution to reach its conclusion that searches without reasonable grounds to believe that a parole violation has occurred are constitutionally permissible. Accordingly, I respectfully concur in the result only.

I am authorized to state that Justice HOBBS and Justice BENDER join in the special concurrence.